**James SESSION, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69083.**

Court of Criminal Appeals of Texas, En Banc.

June 20, 1984.

Rehearing Denied Oct. 3, 1984.

Rex Kirby, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty. and Jim E. Crouch, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

Appellant stands condemned to death pursuant to his conviction for the offense of capital murder.

Appellant contends the evidence of his guilt was insufficient to authorize the verdict of the jury.

■ Two victims were killed during a robbery at their home. The victim named as complainant survived long enough to reach the hospital after somehow managing to travel the fifty yards to his son's house and to alert his daughter-in-law to his plight, despite grievous damage to his jaw and shoulder from a 16-gauge shotgun shell fired at close range, and despite having been stabbed six times about the neck and twice in the back.

While waiting for the ambulance to arrive, the victim repeated to his son the name of appellant until he appeared satisfied that the son understood. In the ambulance the complainant said to an attendant—not in response to any question and while in an extremely agitated state—the words "knife" and "gun", and when the attendant did not understand the next words spoken, spelled out appellant's name. When asked if he was stating that appellant had "done this to him", the complainant answered affirmatively and calmed down.

The companion of appellant's co-actor testified that appellant was armed with the 16-gauge shotgun introduced at trial as one borrowed by appellant, and that appellant returned to their car after her companion and told him that "I had to kill them."

Appellant's palm print was found on a metal box in the victims' house.

The evidence of guilt was ample. The ground of error is overruled.

■ Appellant next contends the court erred in overruling his objection to the court's charge, made upon the ground that, although the indictment alleged that the murder occurred in the course of committing the offense of robbery, the charge authorized a finding of guilt if the murder was in the course of committing *or attempting to commit* that offense. Appellant concedes that *Riles v. State*, 595 S.W.2d 858 (Tex.Cr.App.1980) holds squarely against him, but invites this Court to overrule *Riles*. We decline the invitation.

■ Appellant also contends that the court erred in overruling his objection to the charge on punishment, made on the ground that the charge assumed a fact not in evidence by inquiring whether *the conduct of the defendant that caused the death of the deceased* was committed deliberately and with the reasonable expectation that the death of the deceased or another would result, when appellant's conduct might not have caused the death of the deceased, the jury having been authorized to convict appellant as a party. V.T.C.A., Penal Code, Sec. 7.01, 7.02.[1]

The charge tracked the statutory language of Art. 37.071, V.A.C.C.P., Sec. (b)(1). The significant questions under the first special issue are whether the conduct was deliberate and whether that conduct was committed with a reasonable expectation of resulting death; that appellant's conduct was a causal factor in the death of the complainant was determined by the jury when it convicted him either as the sole perpetrator of the murders or as a party under Sec. 7.02(a)(2). The remaining

---

1. Sec. 7.01(a) provides:

   (a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.
   Sec. 7.02(a)(2) provides:

   (a) A person is criminally responsible for an offense committed by the conduct of another if:

   . . . . .

   (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. . . .

questions—deliberateness and expectation of death—were phrased as questions.

The ground of error is overruled.

Appellant next contends the evidence adduced was insufficient to show that there is a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. See Art. 37.071, V.A.C.C.P., Sec. (b)(2).

Besides the usual parade of police reputation witnesses, the State offered evidence that appellant had been convicted of burglary of a building and placed on probation; the probation was revoked upon appellant's admission to committing theft in connection with the robbery of a storekeeper by a co-actor.

It was further adduced that appellant had been involved in altercations in jail while awaiting trial in the instant case, including four "severe assaults on fellow prisoners" that led to misdemeanor assault charges which were pending at the time of the capital murder trial.

In addition, the jury could consider the facts of the offense itself: one victim, a female septuagenarian, was killed by a knife blow powerful enough to penetrate the spinal column, sever the spinal cord, and bed the blade of the knife at an angle of about ninety degrees; the second victim, the complainant, also in his seventies, was stabbed eight times and shot with a shotgun. Further, appellant chose to victimize the complainant despite knowing that the complainant knew him and could identify him, which he in fact did before dying. It would be reasonable to infer from these circumstances that appellant planned to kill the complainant from the outset.

■ Taken together, the evidence adduced at the guilt-innocence and punishment phases authorized the jury's finding of a probability that appellant would continue to commit criminal acts of violence that would constitute a threat to society. See, e.g., Demouchette v. State, 591 S.W.2d 488 (Tex.Cr.App.1979). Cf. Roney v. State, 632 S.W.2d 598 (Tex.Cr.App.1982) (no prior arrests, murder neither brutal nor calculated); Garcia v. State, 626 S.W.2d 46 (Tex.Cr.App.1981) (no prior criminal record, offense committed on spur of the moment).

The ground of error is overruled.

Appellant next contends the trial court erred in sustaining the State's objection to the admission of evidence regarding the alleged statistical underrepresentation of blacks on Smith County grand juries over a period of about ten years prior to the indictment of appellant.

■ The position of the State and the court was that, because the composition of the particular grand jury which first indicted appellant was examined, the composition of prior grand juries was irrelevant. That position is clearly wrong.

In Castaneda v. Partida, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977), the Supreme Court of the United States made it unmistakably clear that a showing of a long history of statistical underrepresentation of an identifiable group would constitute a prima facie showing of intentional underrepresentation, placing the burden of showing a lack of discriminatory intent upon the State. The evidence sought to be introduced was relevant to that end. The State's and the court's desire not to be inundated by a parade of witnesses could have been accommodated by stipulating to the statistical evidence that those witnesses would have adduced, which was presented by appellant's offer of proof.

Because we will hold the State's showing in response to appellant's allegation of intentional discrimination sufficient to meet their burden of rebutting a prima facie statistical showing, we need not abate this appeal for further fact-finding upon the issue of historical underrepresentation.

Appellant's next ground of error alleges that the court erred in refusing to quash the indictment upon a showing of intentional discrimination in the selection of grand jurors. On the grand jury which indicted appellant, there was one black, a representation of about 8%. During the preceding ten years, according to appellant's offer of

proof, the average black representation was about 10%. Smith County's population is about 25% black. No showing was offered regarding the percentage of blacks among Smith County's citizens eligible to vote.

Unlike the prosecutors in *Castaneda*, the State sought to rebut any inference of intentional discrimination by calling the commissioners who chose the instant grand jury, as well as commissioners who chose other recent grand juries. Each of the commissioners not only denied discriminating against blacks, but testified that the factors involved in choosing names for the grand jury list included reputation and standing in the community and selecting a cross-section, both geographic and ethnic, of the community. In short, the commissioners indicated that they sought fair-minded, responsible persons who would take their duties as grand jurors seriously.

The commissioners testified that each was free to choose his or her own candidates, that candidates were chosen by them in rotation, and that the actual grand juries were manned by the first twelve persons who were able to serve of the 20 or so on each list.

The commissioners further testified to having chosen grand juries with as many as four blacks (33%) and as few as one. One of the four commissioners responsible for having chosen the instant grand jury was black, as were others among those called to testify.

Equally important as the testimony recited, each of the commissioners in the instant case testified that he or she had been instructed by the court, and had followed the instruction:

> That you will not fail to consider or deny person [sic] the right or duty to serve as a Grand Juror by reason or [sic] their sex or national origin, their race or religion or color or creed or ethnic background. The Grand Jury work to be effective as our law contemplates that it should, the persons selected by you should be a representative of all the people of Smith County, the grand Jury in effect repre-

sent a broad cross section of the people of the County. Its members should be composed of residents of different portions of the County and should fairly represent all the various segments of our County's population. Certainly you should consider and fully consider the factors of race and sex and age in trying to come up with a representative cross section of the people of our community[.]

■ We think that the testimony of the commissioners that they followed the instructions noted, combined with their testimony on the factors then considered, with their own ethnic diversity, and with the method of selection which acted to prevent the majority from overriding the will of an individual commissioner rebuts, as to the instant grand jury, the purported prima facie showing of discrimination arising from statistical underrepresentation over a period of ten years.

The ground of error is overruled.

Appellant finally contends, in four grounds of error, that three veniremembers were improperly excused for their refusal to consider finding guilty a participant in a capital murder who did not himself kill, and that the qualification of all veniremembers was tainted by the suggestion upon voir dire that all participants in the underlying offense of robbery were to be treated the same in a murder-robbery case, whether or not they knowingly participated in the killing itself.

■ The general contention that the jurors were improperly qualified finds no support in the record. In the cases cited, the State makes clear that to find *guilt* there must be a finding which the State explains in terms consonant with V.T.C.A., Penal Code, Sec. 7.02, and to assess the punishment of death the jury must find deliberateness *with respect to the killing*. In addition, we note that no objection was taken to this portion of the voir dire.

■ With respect to the three excluded jurors, we note that each made it clear, not that he or she would not make affirmative findings upon the punishment issues in a

"non-triggerman" situation, but that he or she could not find such a person guilty of capital murder. *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), does not speak to the finding of guilt, but only to the assessment of the death penalty. *Witherspoon v. Illinois,* 391 U.S. 510, 523, 88 S.Ct. 1770, 1778, 20 L.Ed.2d 776 (1968) expressly states that veniremembers may be excused for cause who make it unmistakably clear "that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*" [emphasis in original] The instant jurors expressed an intention not to follow the law upon which the State is entitled to rely, not in assessing punishment, but in determining guilt.

The grounds of error are overruled.

The judgment is affirmed.