Cesar Roberto FIERRO aka Cesar Roberto Reyna, Appellant,

v.

The STATE of Texas, Appellee.

No. 68383.

Court of Criminal Appeals of Texas, En Banc.

Jan. 8, 1986.

Rehearing Denied April 9, 1986.

Bruce J. Ponder, court appointed on appeal, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and R. Bradford Stiles, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for capital murder. V.T.C.A., Penal Code, § 19.03. After the jury affirmatively answered the two special issues submitted pursuant to Article 37.071, V.A.C.C.P., the court assessed punishment at death. V.T.C.A., Penal Code, § 12.31.

Initially appellant contends "the evidence was insufficient to sustain a conviction for capital murder because the evidence failed to establish beyond a reasonable doubt that appellant committed murder in the course

of committing the offense of aggravated robbery."

On February 27, 1979, the body of Nicolas Castanon, an El Paso taxicab driver, was discovered in Modesto Gomez Park in the city of El Paso. Castanon had a bullet wound in his head behind the right ear and another bullet wound in his shoulder.

The taxicab which Castanon had been driving was discovered across the international border in Juarez, Mexico, with bloodstains on the front seat and carpet. His jacket was discovered on the grounds of Bowie High School on a road leading from Modesto Gomez Park to Juarez.

The cause of death was shown by autopsy to have been the bullet wound behind the right ear which fractured the first vertebra and the base of the skull and compressed the medulla oblongata. This stopped respiration and caused almost instantaneous death. It was estimated that the shot had been fired from no more than 15 inches away. The bullet fragment recovered revealed the deceased had been shot by a .357 Magnum or a .38 caliber Special. No valuables were found on the body.

Some months later on July 31, 1979, Geraldo (Jerry) Olague, age 16, personally contacted El Paso police officers. His written statement to the police led to the arrest of the appellant. The officers took Olague to Juarez where he pointed out the residence of appellant's mother and stepfather.

At trial Olague testified he was with appellant at the time the deceased was shot. Olague revealed that about 2:15 a.m. on February 27, 1979, he and appellant were together in front of the El Paso Public Library. Olague hailed a taxicab to go home. The taxi driver was Castanon. After he stopped, Olague got in the front seat and appellant got in the back seat. Appellant told Olague that after Olague was taken home he would go to his home in Juarez. Olague requested Castanon to take him to 226 Wooldridge where he lived. As they neared the location Olague heard appellant yell "stop" and as Castanon turned appellant shot him in the back of the head. Castanon fell into Olague's lap leaving blood on Olague's pants. The taxicab jumped the curb and ran into a yard, but Olague hit the brake and the engine died. Olague was surprised and scared. Appellant told him to get into the back seat. Appellant got behind the wheel. Olague remembered asking appellant why he shot Castanon, but he could not recall appellant's response.

The appellant drove to Modesto Gomez Park. Appellant removed Castanon from the cab and dragged him some distance and then shot Castanon again, and took Castanon's wallet and watch and jacket. Olague stated appellant used the jacket to wipe up some blood and threw the jacket out along the road they took to Juarez. The watch was discarded in a dumpster. After reaching Juarez, the taxicab was abandoned and appellant and Olague went to the home of appellant's mother. Olague revealed that when the television news told of the murder appellant laughed. Later appellant and Olague went into the interior of Mexico where appellant sold his .357 Magnum to a rancher. Olague then went to visit his father in Mexico, but appellant later checked on him by telephone and warned him not to tell of the incident. After some months, Olague returned to El Paso and went to the police.

Appellant's written extrajudicial confession was also introduced into evidence. It was very similar to the details related by Olague. Appellant stated he had a .357 Magnum which had been stolen by his brother, that he shot the deceased and drove the automobile to a small park. After Olague dragged the body out of the cab, appellant admitted he shot the deceased and took his watch. He stated he later threw the watch into a trash can on the way to Juarez.

■ Appellant argues the evidence does not show the murder was committed in the course of a robbery as alleged in the indictment, and thus the evidence is not sufficient to sustain a conviction for capital murder. He contends there was no prior

discussion of robbery prior to the shooting and no indication in the confession of an intent to commit robbery at the time of the shooting.

In *Riles v. State*, 595 S.W.2d 858, 862 (Tex.Cr.App.1980), the defendant claimed a fundamental error in the charge. There this Court stated:

"The phrase 'in the course of committing or attempting to commit ...' as used in Sec. 19.03(a)(2), supra, is not defined in the Penal Code. Section 29.01(1) of the code, however, does define 'In the course of committing theft.' That phrase is given the definition of 'conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.' We similarly construe the phrase of Sec. 19.03(a)(2) to mean conduct occurring in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of the offense, i.e., in this case, of robbery."

See also *Autry v. State*, 626 S.W.2d 758, 762 (Tex.Cr.App.1982); *Anderson v. State*, 701 S.W.2d 868 (Tex.Cr.App.1985) (Murder in the course of robbery).

In *Woolridge v. State*, 653 S.W.2d 811, 816 (Tex.Cr.App.1983), it was held that the fact that the aggravated rape had been committed prior to the events leading to the death of the victim who was killed in flight after rape did not mean that the death of the victim was not caused in the course of committing aggravated rape as alleged in the capital murder indictment. There this Court wrote:

"The Court has held 'in the course of committing' an offense listed in V.T.C.A., Penal Code, Sec. 19.03(a)(2), means conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense. *Riles v. State*, 595 S.W.2d 858, 862 (Tex.Cr.App.1980)."

Thus, a robbery of the victim immediately after the shooting of the victim resulting in his death is capital murder occurring in the course of committing robbery.

The fact that there was no prior discussion of robbery and no indication of an intent to commit robbery mentioned in the confession is not controlling. It is true there was no evidence that appellant demanded of the victim money or property prior to shooting him, but a verbal demand is not the talisman of an intent to steal. Such intent may be inferred from actions or conduct. *Johnson v. State*, 471 S.W.2d 811, 812 (Tex.Cr.App.1971).

Viewing the evidence in the light most favorable to the jury's verdict, we hold the evidence was sufficient for the rational trier of facts to find all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard applies in both direct and circumstantial evidence cases. See *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App.1983) (Opinion on State's Motion for Rehearing); *Freeman v. State*, 654 S.W.2d 450 (Tex.Cr.App.1983) (Opinion on Rehearing); *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983) (Opinion on Rehearing). See also *Brandley v. State*, 691 S.W.2d 699, 703 (Tex.Cr.App. 1985); *Anderson v. State*, supra.

Next appellant contends the trial court erred in admitting into evidence his extrajudicial confession because the confession was taken as a result of an illegal arrest in that the arrest warrant was issued pursuant to an affidavit which failed to state probable cause.

The record reflects that after taking a statement from Olague on July 31st the El Paso police learned the next morning that appellant was in the county jail as a result of alleged violations of probation. Appellant does not challenge the validity of his custody under the revocation proceedings. The city officers checked appellant out of the county jail about 8:30 a.m. on August 1st and took him to the Crimes Against Persons section of the police department. He was asked about the incident, and when he did not respond, Officer Medrano told him not to say anything until he had been taken before a magistrate and given his "Miranda" warnings. At 9:08 a.m. appel-

lant was taken before Justice of the Peace Baca. There Officer Holland filed an affidavit for an arrest warrant with Judge Baca. Determining that it reflected probable cause, the judge issued an arrest warrant. Judge Baca informed appellant of the murder charge and warned him of his rights in English and Spanish in accordance with Articles 15.17 and 38.22, V.A.C.C.P., and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The officers returned appellant to the police department and Officer Medrano again warned appellant of his rights under Miranda and commenced taking the written confession at 9:35 a.m. It was concluded at 10:17 a.m. The confession was taken in Spanish at appellant's request and typed in Spanish. Appellant read the warnings at the top of the confession form and initialed it. He then signed the confession after reading it.

Appellant argues that the arrest warrant affidavit does not meet the second prong of the test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), in that there were no underlying circumstances from which the affiant concluded that the informant was credible.

Appellant points to the first paragraph which details affiant's (Officer Holland's) investigation into the homicide but does not mention or implicate the appellant, and that the second paragraph mentions an interview with an unnamed informant who claimed to be an eyewitness but does not state just what was observed.

■ We need not determine whether the affidavit reflects probable cause. The appellant was in legal custody on another charge. Further, a confession, otherwise shown to have been voluntary, is not rendered inadmissible by the fact its author was under arrest or in custody at the time even though the arrest may have been under invalid process or without any process or legal right absent a causal connection between invalid arrest and confession. *De-Bolt v. State*, 604 S.W.2d 164, 167 (Tex.Cr. App.1980); *Hamel v. State*, 582 S.W.2d 424, 427 (Tex.Cr.App.1979); *Mann v. State*,

525 S.W.2d 174 (Tex.Cr.App.1975); *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975), aff'd 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

■ Even if it can be argued that appellant's arrest was illegal under the arrest warrant, was the connection between appellant's unauthorized arrest and his incriminating statements obtained during his illegal detention sufficiently attenuated to permit the use of the statements? See *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). See also *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

As identified in *Brown v. Illinois*, supra, and reiterated in *Dunaway v. New York*, supra, and as this Court held in *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1981), the factors to be considered in determining whether the confession has been obtained by exploitation of the illegal arrest are:

1) whether *Miranda* warnings were given;

2) the temporal proximity of the arrest and the confession;

3) the presence of intervening circumstances; and

4) the purpose and flagrancy of the official misconduct.

In the instant case, the accused herein was given his *Miranda* warnings, but that event cannot alone serve to outweigh other factors extant. *Brown v. Illinois*, supra; *Green v. State*, supra. Appellant began giving his confession approximately one hour after being transferred from the custody of the county jail to the city police. The only intervening events of significance reflected by the record militate in favor of the State: that appellant was informed why he was going to be taken before a magistrate, and that he was in fact taken before a magistrate for his *Miranda* warnings within 30 minutes of his transfer of custody.

The record does not reflect that the El Paso police acted in bad faith. When ap-

pellant was transferred to the custody of the city police, they took appellant to a magistrate where appellant was formally arrested and given his *Miranda* warnings. The officers' actions were not investigatory,[1] but rather designed to formally warn and arrest appellant. The above posed question may be answered in the affirmative.

Under all the circumstances the confession was admissible despite any claim of an illegal arrest.

■ Appellant further contends the confession was inadmissible into evidence as it was not given voluntarily "and came about as the result of coercion."

The court conducted a hearing on the pre-trial motion to suppress the confession. See Article 38.22, V.A.C.C.P.; *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The record reflects that after Olague gave his statement on July 31st Officers Holland and Medrano took him to Juarez and contacted Juarez police officers. Olague pointed out to all the officers the house where he had gone with appellant after the shooting. The Juarez officers were asked to communicate any information they obtained. Juarez Police Lt. Palacios called Medrano in El Paso about 5 a.m. and told him he had some information and asked Medrano to meet him and other Juarez officers for breakfast. Medrano contacted Holland and they drove to Juarez for breakfast. There they learned from Palacios and other Juarez officers the appellant was in their own county jail, which fact had been learned from appellant's mother. Holland and Medrano returned to El Paso and located appellant in jail. They took him before Judge Baca as earlier described where appellant was given his *Miranda* rights in both English and Spanish. Later appellant was taken to the police department and again warned. In discussing the case with appellant, Medrano asked him if he lived at a certain address in Juarez and gave his mother's name. When appellant asked how Medrano got that information, Medrano told him it was from the Juarez police. Appellant then inquired if his mother was in custody and insisted she had nothing to do with the murder. Appellant stated his mother had once been arrested for possession of marihuana and the conditions in the Juarez jail were not good. Medrano testified he truthfully had no information that appellant's mother was in custody. To satisfy appellant, Medrano called Lt. Palacios and handed the phone to appellant. Medrano did not know what conversation took place, but appellant seemed satisfied when it concluded. Thereafter the confession was taken from appellant. The time consumed was from about 9:35 a.m. until 10:15 or 10:17 a.m. Medrano denied that he threatened or coerced appellant or beat him. He stated appellant was given a cup of coffee and a pack of cigarettes and that the appellant had freely given the confession. He denied that he had shown to appellant two letters that had been taken from appellant's mother.

Officer James Holland, Jr., testified that appellant gave the confession freely and voluntarily, was not threatened or physically abused, etc. Judge Baca testified as to his properly warning the appellant of his rights.

Miguel Ramos, a Juarez newspaper man, testified he saw Socorro Reyna (appellant's mother) in the Juarez jail after he had been asked to investigate by her brother. He could not recall the date, and did not estimate the month or year. The jail nurse testified appellant complained on August 3, 1979, of a throat infection and that he was injured while being interrogated. She did not testify she saw any bruises or injuries.

Socorro Reyna testified at 3:30 a.m. on August 1, 1979, the Juarez police came to her home and took her and her husband to jail. They took from them two letters, one from the appellant and one from his brother. They were held in jail until 7 p.m. that

---

**1.** Compare *Dunaway v. New York*, supra; *Brown v. Illinois*, supra; *Green v. State*, supra, for examples of flagrant official misconduct.

day and then released. Alfredo Murga Garcia, appellant's stepfather, testified the armed police came to the house at 3 a.m. on August 1, 1979, and took him and his wife to jail and did not release them until about 7 p.m.

Appellant's wife, Laticia Fierro, testified she saw appellant in jail on August 3rd or 4th in 1979 and he had bruises on his face.

In his brief testimony the appellant testified his confession was not voluntary, that Medrano had told him that his mother was in jail and would remain there until he confessed. He stated Medrano showed him two letters addressed to his mother, one from his brother and one from him. He knew they had been taken from his mother. He also stated Medrano hit him three or four times on the side of the head. He never mentioned any telephone conversation with Lt. Palacios nor was he asked.

The court overruled the motion to suppress. It later made findings of facts that appellant had voluntarily given the confession after being duly warned of his rights, and that it was obtained without use of force, threats, promises or coercion. The court found Medrano did not strike appellant, that Medrano did not tell appellant his mother would remain in jail until he confessed, that he did not have two letters from appellant's mother. The court further found the Juarez officers were not acting as agents of or under the direction of the El Paso Police Department.

The trial court is the sole trier of the facts at a hearing upon a motion, and this Court is not at liberty to disturb any finding supported by the record. *McKittrick v. State*, 541 S.W.2d 177 (Tex.Cr.App.1976); *Green v. State*, 615 S.W.2d 700, 707 (Tex. Cr.App.1981); *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983); *Anderson v. State*, supra, and cases there cited.

In *Roberts v. State*, 545 S.W.2d 157, 161 (Tex.Cr.App.1977), this Court wrote:

"A threat made by police officers to arrest or punish a close relative or a promise to free a relative of a prisoner in exchange for a confession may render the prisoner's subsequently made confession inadmissible in evidence. *People v. Steger*, 16 Cal.3d 539, 128 Cal.Rptr. 161, 546 P.2d 665 (1976). 80 A.L.R.2d 1428, 1438. However, where no express or implied promise or threat is made by the police, a prisoner's belief that his cooperation will benefit a relative will not render the prisoner's subsequent confession inadmissible in evidence. *People v. Steger*, supra. See 80 A.L.R.2d 1428, 1438.

"Even when police have made a vague promise to see 'what could be done' about freeing a prisoner's friends, it did not render a confession made subsequently inadmissible when the subject of leniency for the friends was introduced initially by the prisoner and not the police. *People v. Kendrick*, 56 Cal.2d 71, 14 Cal.Rptr. 13, 363 P.2d 13 (1961)."

When all the circumstances are considered, we conclude they support the trial court's determination that the confession was made voluntarily and that it was admissible in evidence. Appellant's ground of error is overruled.

It is observed that the issue of the voluntariness of the confession was later submitted to the jury in the court's charge and was rejected by the jurors.

■ In two other grounds of error appellant contends the trial court erred in permitting State witnesses, Rogelio Perez, a probation officer, and Lt. H. Y Gomez, assistant jail administrator, to testify at the penalty stage of the trial as to the probability of the appellant being violent in the future. Appellant contends Perez and Gomez were not experts and were allowed to express their opinion which invaded the province of the jury.

It is observed that the objection to the testimony of each witness was only that it "invaded the province of the jury." There was no objection as to the qualifications of Gomez and Perez to testify as they did. While "invading the province of the jury" is found in the stated grounds of error, the argument advanced thereunder pertains to the qualifications of the witnesses. Insofar as the ground of errors do not comport

with the trial objections, nothing is presented for review. *Russell v. State,* 665 S.W.2d 771 (Tex.Cr.App.1983); *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.1979); *Watkins v. State,* 572 S.W.2d 339 (Tex.Cr.App.1978); *Crocker v. State,* 573 S.W.2d 190 (Tex.Cr.App.1978); *Cain v. State,* 549 S.W.2d 707 (Tex.Cr.App.1977).

Further, we have previously held that a properly qualified lay witness could state an opinion concerning the probability that a capital murder defendant would continue to commit criminal acts of violence. *Esquivel v. State,* 595 S.W.2d 516 (Tex.Cr.App.1980); *Simmons v. State,* 594 S.W.2d 760 (Tex.Cr.App.1980).

In *Russell v. State,* supra, three Abilene police officers, a district attorney investigator and a jail inmate when Russell was incarcerated were permitted to testify in that capital murder case as to the probability of Russell committing criminal acts of violence in the future. Each were shown to know the appellant and were in a position to express the opinion they did.

In the instant case Perez was the appellant's probation officer from February, 1978 until September, 1979, when probation was revoked. Gomez, a jail administrator, had handled appellant on a number of occasions, had appellant in jail at the time of trial and had him segregated from the rest of the jail population because he was a severe disciplinary case. Each witness knew the appellant and was in a position to express the opinion they did. *Russell v. State,* supra.

Appellant has not shown by citation of authority or otherwise how the province of the jury was invaded by the testimony given. His grounds of error are overruled.

Appellant also contends the trial court erred in overruling his objection and allowing an unqualified witness to testify that certain substances were marihuana and valium.

Alfredo Armenderez, deputy sheriff in the jail division, testified at the penalty stage of the trial as a State's witness. He related he had dealt with appellant on occa-

sion. He stated that in May, 1979 the appellant came to jail to visit his brother Sergio, and had with him a package for another inmate named Ortega. The brown paper sack appellant had with him was searched for security reasons. The following is the complained of testimony:

"Q. Officer Armendariz, you looked into this brown paper bag that the Defendant had with him; is that correct?

"A. Yes, sir.

"Q. Before he was allowed to take it up to the jail?

"A. Yes.

"Q. What was inside the brown paper sack?

"A. It was approximately eight paperback books.

"Q. And did you further inspect those paper-back books?

"A. Yes, sir, I did.

"Q. And what did you find?

"A. There was on the binding of the books some marihuana and some other blueish substance which was later identified as valium.

"MR. ROSADO [appellant's counsel]: Your Honor, I'm going to object, again, and ask for a mistrial based on the testimony.

"THE COURT: I'll overrule the objection."

Thereafter Armendariz testified he had had occasion to see marihuana in the past, and based on prior observations the substance glued to the binding on the books was marihuana. He also related that he testified at the revocation hearing at which appellant's probation was revoked for possession of marihuana on the date of the jail visit.

■ It is first observed that the objection was the first and only objection made to Armendariz's testimony. The objection was at most general, stating simply counsel was objecting "again" and asking for a mistrial. No basis for the objection was given nor specific reason assigned. See Ray, Texas Practice, Law of Evidence, § 24

(1980). A general objection preserved nothing for review and is not sufficient to apprise the trial court of the complaint urged. *Henderson v. State,* 617 S.W.2d 697 (Tex.Cr.App.1981); *Cooper v. State,* 578 S.W.2d 401 (Tex.Cr.App.1979); *Vela v. State,* 516 S.W.2d 176 (Tex.Cr.App.1974). Nothing is presented for review.

Appellant in his brief cites *Bright v. State,* 556 S.W.2d 317 (Tex.Cr.App.1977), for the proposition that Armendariz did not possess sufficient expertise to identify the substances as marihuana or valium. See also *Curtis v. State,* 548 S.W.2d 57 (Tex.Cr. App.1977). However, this was not the objection offered to the trial court. See *Russell v. State,* supra.

It has been held that an experienced peace officer may be qualified to testify that a certain green leafy plant substance is marihuana. *Miller v. State,* 168 Tex. Cr.R. 570, 330 S.W.2d 466 (1959); *Satery v. State,* 455 S.W.2d 294 (Tex.Cr.App.1970); *Jordan v. State,* 486 S.W.2d 784 (Tex.Cr. App.1972); *Boothe v. State,* 474 S.W.2d 219 (Tex.Cr.App.1971); *Houlihan v. State,* 551 S.W.2d 719, 724 (Tex.Cr.App.1977); *Ward v. State,* 659 S.W.2d 643, 645 (Tex.Cr.App. 1983). It appears Armendariz was qualified to testify as to the substance being marihuana though the predicate came after the answer. Still further, the record shows that appellant's probation was revoked upon his possession of marihuana on the date in question.

While Armendariz should not have testified that the bluish substance was "later identified as valium," there was no proper objection at the time.

Also appellant, testifying at the penalty stage of the trial, acknowledged he "had the sack," "had the possession." We find no reversible error and overrule appellant's contention.

Appellant attacks the constitutionality of Article 37.071, V.A.C.C.P., in that it fails to provide a sufficiently objective standard for the jury to insulate it from imposing the death penalty in an unfair and arbitrary manner. Appellant acknowledges that *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct.

2950, 49 L.Ed.2d 929 (1976), has been decided contrary to his contention. See also *Rodriguez v. State,* 597 S.W.2d 917 (Tex. Cr.App.1980); *Corley v. State,* 582 S.W.2d 815 (Tex.Cr.App.1979); *Collins v. State,* 548 S.W.2d 368 (Tex.Cr.App.1976), cert. den. 430 U.S. 959, 97 S.Ct. 1611, 51 L.Ed.2d 811. Appellant's contention is overruled.

Appellant further contends the trial court unconstitutionally applied Article 37.-071(b)(2), V.A.C.C.P., by allowing inadmissible evidence before the jury and not charging the jury regarding mitigating evidence. The ground of error is multifarious.

■ Reference is made to the testimony of probation officer Perez, jail administrator Gomez, and deputy Armendariz previously discussed. Article 37.071, supra, is not unconstitutional on the theory it confers upon the trial court standardless discretion in determining the evidence which may be presented as to any matter relative to punishment. *Brown v. State,* 554 S.W.2d 677 (Tex.Cr.App.1977).

Further, we find no objection or special requested charge on mitigating evidence. See Articles 36.14 and 36.15, V.A.C.C.P. Nothing is presented for review.

■ In order to be constitutional, a capital murder sentencing procedure must allow the jury to consider all relevant mitigating evidence. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The death penalty procedures followed in this State have been heretofore found constitutional since the jury is permitted to consider mitigating factors. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980). In the instant case mitigating evidence was offered by the appellant and was argued to the jury. There is nothing to show that the jury was prevented from considering the same. Appellant's contention is overruled.

■ Appellant further challenges the sufficiency of the evidence to prove that there is a probability he would commit criminal acts of violence that would consti-

tute a continuing threat to society. Article 37.071(b)(2), V.A.C.C.P.

It is clear that in answering the special issue under Article 37.071, supra, the jury may consider all of the evidence adduced at the guilt stage of the trial. *Cannon v. State*, 691 S.W.2d 664 (Tex.Cr.App.1985); *Green v. State*, 682 S.W.2d 271, 289 (Tex. Cr.App.1984); *Russell v. State*, 665 S.W.2d 771, 781 (Tex.Cr.App.1983), cert. denied, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752, rehearing denied, 466 U.S. 932, 104 S.Ct. 1720, 80 L.Ed.2d 192; *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983); *Mitchell v. State*, 650 S.W.2d 801, 812 (Tex. Cr.App.1983); *Bravo v. State*, 627 S.W.2d 152, 158 (Tex.Cr.App.1982); *Wallace v. State*, 618 S.W.2d 67 (Tex.Cr.App.1981); *Duffy v. State*, 567 S.W.2d 197 (Tex.Cr. App.1978), cert. denied, 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 666 (1978); *Felder v. State*, 564 S.W.2d 776 (Tex.Cr.App.1978); *Brock v. State*, 556 S.W.2d 309 (Tex.Cr. App.1977); *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976). The circumstances of the offense and the facts surrounding it may furnish greater probative evidence than any other evidence regarding the second special issue submitted at the penalty stage of a capital murder case. *Russell v. State*, supra; *Mitchell v. State*, supra.

Keeping in mind the brutal facts of shooting the deceased in the head while he was driving his taxicab and other circumstances of the capital murder committed in the course of a robbery, we turn to the facts produced at the penalty stage of the trial.

The record reflects that appellant was convicted on February 7, 1978 of burglary of a vehicle and had his probation revoked on September 26, 1979 for failure to report to his probation officer and for possession of marihuana brought to the county jail. Probation officer Perez testified appellant was a "poor probationer," had a poor employment record, failed to keep job application appointments, failed to report to him, absconded from supervision, had indica-

tions of heroin abuse, had a criminal record and was not "amenable to rehabilitation," and in his opinion would continue to commit violent acts.

The record also reflects that in May, 1978 appellant's wife filed a complaint against appellant stating he assaulted her and took her paycheck.

Jail administrator Gomez testified he had to segregate appellant from the general jail population because he was an extreme disciplinary problem in jail. He expressed the opinion appellant would continue to commit criminal acts of violence. Deputy Armendariz testified he arrested appellant in the county jail for possession of marihuana which he was apparently bringing to a jail inmate. After Armendariz testified at appellant's revocation of probation hearing, appellant told him that he would get the revocation set aside and he would see Armendariz "on the streets." Later, while searching appellant's bunk in the jail, Armendariz found a knife underneath the mattress.

Deputy sheriff Alarcon testified he was called to the jail visitors' area while appellant was in jail and found appellant's wife unbuttoning her pants and blouse and exposing her breasts to the appellant. Alarcon told the wife to leave the jail. Thereafter appellant threatened Alarcon's life, stating he hoped when he got out of the pen Alarcon would still be alive. Later appellant showed Alarcon the jury list for the instant case and pointed to Alarcon's name on the list. He told Alarcon he now knew where Alarcon lived, and started laughing. Alarcon took this as another threat to him and to the security of his wife and children. Alarcon noted he was not listed in the city directory or the telephone book. Alarcon also testified that the night before the penalty stage of the trial commenced appellant, while in jail, stated to him that when he (appellant) came back he was going to kill somebody.

Appellant, age 23, testified he had been convicted of burglary of a vehicle and had his probation revoked because of possession of marihuana. He admitted he had a

knife in his jail cell, and acknowledged he had beaten a man in Tennessee [2] who had to be hospitalized, but he claimed self-defense.

Appellant's wife, mother, father, stepfather and jail doctor testified for the defense at the penalty stage of the trial. Appellant in his brief concedes that most of the defense testimony is "not relevant" to the issue now raised. Appellant's wife did testify that appellant did not assault her and take her paycheck, but she was later impeached by the statement she gave to the police at the time of the alleged assault. Dr. Pablo Ayub testified he saw appellant in jail on a number of occasions and did observe him in a violent mood or act in an offensive manner. He acknowledged he was unfamiliar with appellant's record.

Viewed in the light most favorable to the jury's verdict, we conclude the evidence was sufficient to support the jury's affirmative answers to Special Issue No. 2. See Article 37.071(b)(2), V.A.C.C.P.; *Bravo v. State*, 627 S.W.2d 152 (Tex.Cr.App.1982); *King v. State*, 631 S.W.2d 486 (Tex.Cr.App. 1982), cert. den. 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188; *Session v. State*, 676 S.W.2d 364, 367 (Tex.Cr.App.1984).

The judgment is affirmed.

TEAGUE and MILLER, JJ., concur in the result.

CLINTON, J., dissents to the conclusion that there is sufficient evidence to support the answer to Special Issue No. 2.

---

**2.** There was evidence that while on probation he had been allowed to go to Tennessee to seek employment.