

**NUMBER 13-11-00770-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**VALENTIN MARTINEZ**                                                          **Appellant,**
**A/K/A JOSE GUADALUPE**
**RAMIREZ MARTINEZ,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

---

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Valentin Martinez a/k/a Jose Guadalupe Ramirez Martinez, was convicted of capital murder and sentenced to life imprisonment without parole. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2011). On appeal, Martinez contends that (1) the trial court reversibly erred when it instructed the jury that it could convict if it

found that "an object unknown to the grand jury" was used in the commission of the offense, and (2) the evidence was legally insufficient to support his conviction. We affirm.

## I. BACKGROUND

On the morning of November 3, 2010, police officers responded to a call regarding a possible homicide at a residence on Garcia Street in Pharr, Texas. When the officers arrived on scene, bystanders directed them to a window on the west side of the home, through which they could see an elderly male subject lying wounded on the floor. The front door to the residence was locked, so the officers kicked in the door to gain access. When they entered, they observed that the elderly male was covered in blood, motionless, and appeared to have been deceased for some time before they got there. There were no indications that there had been a previous forced entry or an altercation inside the house. Investigators identified the victim as Ysrael Cardenas.

Police recovered clothes, a beer can, and a knife from the residence for forensic testing. No usable finger prints were obtained from the items. However, there was apparent blood on the knife, which testing showed to be consistent with Cardenas's DNA profile. Moreover, swabs of the mouth of the beer can revealed DNA consistent with Martinez's DNA profile. The forensic pathologist who performed the autopsy on Cardenas testified that Cardenas suffered multiple stab wounds, including defensive wounds on his arms, and that a stab to the torso was the cause of death. There was no alcohol in Cardenas's system at the time of the autopsy.

At the scene, police were informed that the victim's black Ford F-150 truck was missing. Video surveillance footage from the McAllen-Hidalgo-Reynosa International

Bridge showed that a Ford truck bearing Cardenas's license plates passed through the border toll plaza bound for Mexico at 2:41 a.m. on November 3, 2010.

Martinez's sister Concepcion Alvarez and her husband Guadalupe Ramirez were neighbors of Cardenas. Alvarez testified that she knew Cardenas for several years and spoke to him on a daily basis. On November 2, 2010, Martinez came over to their house to help fix a truck belonging to Alvarez and her husband. Alvarez stated that Cardenas gave Martinez permission to stay at his home that night. When Alvarez went to sleep that night, the three men—Martinez, Ramirez, and Cardenas—were outside. When she woke up the following morning, she saw that Cardenas's truck was not parked outside his home; she testified that this was rare.[1] Ramirez testified that Cardenas would occasionally lend his car to other people but that he never lent out his truck. Alvarez stated that Cardenas's other car was parked on the street, whereas it was usually parked in the driveway. Alvarez further observed that a block of wood described as a "tree stump" was moved from its usual location in Cardenas's driveway. Because of these observations, Alvarez decided to check on Cardenas. When she and Ramirez saw Cardenas "laying down" inside the home covered in blood, Ramirez called police.

Police showed the border crossing surveillance video to Ramirez and Alvarez, and both identified the driver as Martinez. Police then obtained a warrant to arrest Martinez. Later that day, Martinez was detained in Mexico and extradited to the United States.[2] At the time he was detained, Martinez was wearing a burnt orange Texas

---

[1] Another neighbor, Javier Garcia, also testified that it struck him as odd that Cardenas's black truck was not parked in front of his house on the morning of November 3, 2010.

[2] The black Ford F-150 truck was recovered by police at the time of Martinez's apprehension. The lead investigator testified that, between the time the truck was observed crossing the international

3

Longhorns t-shirt and a pair of gray slacks. The articles of clothing were entered into evidence at trial as State's Exhibits 67 and 68, respectively.

Gilberto Cardenas, the victim's son, testified that his father "loved" his black truck and "wouldn't lend it to anybody." He stated that, though he no longer lived with his father, he still had a room at his father's house where he kept clothes and other personal items. Gilberto stated that, when he saw a picture of Martinez in the news, he noticed that "the man was wearing my cap," which he usually kept in his room at his father's house. Gilberto identified State's Exhibit 67 as his shirt, which he kept at his father's house.

Another son of the victim, Armando Cardenas, testified that he asked to borrow his father's truck once, about three or four months prior to the murder, but his father refused because "the license plate and sticker" had "expired."

Sylvia Cardenas, the victim's daughter, testified that her sister Olivia gave their father the black Ford truck in 2006 or 2007. According to Sylvia: "He loved his truck because it was given to him by his daughter. No one was allowed to use it. I mean, nobody could use it. He himself wouldn't drive it. So I mean, he loved his truck." Sylvia stated that she recognized State's Exhibit 68 as a pair of pants that belonged to her father. She stated that she knew they were his pants because she used to wash his clothes, and because they were custom tailored to fit him.

The day after he was detained,[3] Martinez was advised of his *Miranda* rights and

---

bridge and the time it was recovered from Martinez, the license plates, tires, and rims had been changed. However, police were able to identify it as Cardenas's truck by the vehicle identification number.

[3] When Martinez was initially returned to the custody of the Pharr Police Department, he appeared intoxicated to the point that officers elected not to question him that day.

gave a video-recorded statement in Spanish. The statement was played for the jury and entered into evidence, as was a transcript of the statement translated into English. In his statement, according to the translated transcript, Martinez stated that his sister called him to ask him to fix her broken-down truck on November 2, 2010. He stated that he knew Cardenas, his sister's neighbor, because Cardenas previously allowed him to sleep in his van. After working on his sister's car, he went to Cardenas's house to "fix[] his starter engine" and "have a few beers." Martinez stated that Cardenas invited him to stay at his house. Martinez then stated, according to the translated transcript:

> And then someone got there in a white truck, from (unclear) because they supposedly play tournaments of—the balls, billiards. . . . And we all stayed there, and, and, and my big screw up was that I had been going to buy beer . . . [b]ecause I was less drunk than the other man, and well it was easy for me, the truth, when I was over there, and (unclear) I went to Reynosa (unclear). And that is all that happened.

Martinez claimed that he left the residence in Cardenas's black truck to buy beer.[4] He claimed that his sister then called him to tell him that Cardenas had been killed. He claimed that, instead of returning to Cardenas's house, he crossed the International Bridge at around 8:00 or 9:00 p.m.[5] He claimed that he borrowed the clothes and the cap that he was seen wearing in the border surveillance video from his sister. At one point during his statement, Martinez conceded that "I did steal his truck"; however, he later stated that he borrowed the truck. He vehemently denied having killed Cardenas.

---

[4] Martinez gave a description of the store at which he supposedly bought the beer; he was later informed by the interviewing officer that the store he described "has been closed for months."

[5] After being presented with evidence that he in fact crossed the International Bridge at 2:41 a.m., Martinez revised his statement, noting that the man in the white truck arrived "between nine and ten" and explaining the time discrepancy as follows:

> I was drinking in the truck here in the Valley, and I was going round and round, and I was all over the place, because you think I left from there, got to this one, no, I was in the truck cruising around, drinking and then I got even more drunk and I took off to Reynosa, and then the guys stayed there . . . .

5

After the defense closed without presenting evidence, the jury found Martinez guilty of capital murder and he was sentenced to life imprisonment without parole. This appeal followed.

## II. DISCUSSION

### A. Evidentiary Sufficiency

#### 1. Standard of Review and Applicable Law

In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes

6

the particular offense for which the defendant was tried. *Id.* Here, a hypothetically correct jury charge would state that Martinez is guilty of the indicted offense if he intentionally or knowingly caused Cardenas's death while in the course of committing robbery. TEX. PENAL CODE ANN. § 19.02(b)(1) (West Supp. 2011); *id.* § 19.03(a)(2). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* § 29.02(a)(1) (West Supp. 2011). Theft is the unlawful appropriation of property with intent to deprive the owner of property; appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(a), (b)(1) (West Supp. 2011). A person acts "intentionally" with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a) (West 2011). A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person acts "recklessly" with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c).

### 2. Analysis

Martinez argues by his second issue that the evidence was insufficient to prove that he was Cardenas's assailant. He cites *Johnson v. State* in part for the proposition that "a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant." 673 S.W.2d 190, 195 (Tex. Crim. App. 1984). However, this rule, known as the "outstanding reasonable hypothesis" construct, has been definitively

7

abrogated by the Texas Court of Criminal Appeals. *See, e.g., Wise v. State*, 364 S.W.3d 900, 904 (Tex. Crim. App. 2012); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999); *Brown v. State*, 911 S.W.2d 744, 746 (Tex. Crim. App. 1995); *Geesa v. State*, 820 S.W.2d 154, 159 n.6 (Tex. Crim. App. 1991). In fact, "[t]he evidence-sufficiency standard of review is the same for both direct and circumstantial evidence." *Wise*, 364 S.W.3d at 904. "For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt." *Id.*

Martinez is correct that there is no direct evidence placing him at the scene at the time of the killing. But "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Here, the circumstantial evidence supporting the jury's finding as to the identity of Cardenas's assailant included: (1) testimony that Martinez was with Cardenas at Cardenas's home the night before the killing; (2) testimony that Cardenas invited Martinez to stay at his house that evening; (3) the presence of DNA consistent with Martinez's profile on a beer can recovered from Cardenas's home; (4) surveillance footage showing that, shortly after the killing, Martinez fled to Mexico in Cardenas's truck, which testimony showed Cardenas "loved" and "wouldn't lend . . . to anybody"; (5) testimony that the license plates, rims and tires on the truck had been changed after Martinez drove the truck into Mexico and before he was apprehended; and (6) testimony that Martinez was wearing Cardenas's custom-tailored pants and Gilberto's cap and shirt at the time he was apprehended. The jury also was able to consider Martinez's video-recorded police interview—which took place

a day after he was apprehended because police determined he was initially too intoxicated to be interviewed—in which he equivocated as to the time and the reasons for his crossing the border.

Martinez notes that the mere possession of a deceased's car has been held to be insufficient by itself to support a conviction, *see Flores v. State*, 551 S.W.2d 364, 369 (Tex. Crim. App. 1977) ("We know of no case . . . where recent unexplained possession by an accused of a victim's stolen property is sufficient by itself to sustain a conviction for murder."), and that mere presence at the scene or flight from the scene has also been held to be insufficient by itself to support a conviction. *See King v. State*, 638 S.W.2d 903, 904 (Tex. Crim. App. 1982) ("Presence in the vicinity of a crime and flight are not alone sufficient to conclude, beyond a reasonable doubt, that the accused committed the offense."); *Barnes v. State*, 62 S.W.3d 288, 297 (Tex. App.—Austin 2011, pet. ref'd) ("The State must show more than mere presence to establish participation in a criminal offense"). However, "an accused's recent unexplained possession of a victim's stolen property may be sufficient to sustain a conviction for robbery," and "it is well settled that evidence of a defendant's possession of the fruits of a crime are admissible in a murder case." *Flores*, 551 S.W.2d at 368–69. Moreover, the court of criminal appeals has held explicitly that "a factfinder may draw an inference of guilt from the circumstance of flight." *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007); *see Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt."). In any event, the jury was entitled to consider all of the evidence, which included Martinez's flight from the scene,

9

his possession of Cardenas's vehicle, his possession of the Cardenases' clothes, and the other circumstantial evidence as set forth above.

Martinez alleged in his recorded statement that there was another man, who drove a white truck, that stayed at Cardenas's house on the evening in question.[6] However, the jury, as fact-finder, was entitled to believe or disbelieve any part of Martinez's statement. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000) ("Defensive evidence which is merely consistent with physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence."). We find that the evidence, taken as a whole and viewed in the light most favorable to the verdict, allowed a rational trier of fact to conclude beyond a reasonable doubt that Martinez was the individual that killed Cardenas. *See Hacker*, 389 S.W.3d at 865. We overrule his second issue.

Martinez argues by his third issue that the evidence was insufficient to show that the killing was carried out in the course of committing robbery. Here, "[s]ince the State alleged the same assaultive conduct for both the murder and the robbery, it had to prove that the appellant intentionally [killed] the deceased with the intent to obtain control of the deceased's property." *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986), *superseded on other grounds by Russeau v. State*, 785 S.W.2d 387, 390 (Tex. Crim. App. 1990). "A killing and unrelated taking of property do not constitute capital murder under 19.03(a)(2): the State must prove a nexus between the murder and the theft, i.e. that the murder occurred in order to facilitate the taking of the

---

[6] We note that Martinez's allegation regarding another man at Cardenas's house was not corroborated by any other evidence. Neither Alvarez, Ramirez, or Garcia recalled seeing any vehicles other than Cardenas's vehicles at his house on the night of the murder or the following morning.

property." *Ibanez*, 749 S.W.2d at 807. Martinez claims that "[t]here was no dispute that [he] and the victim were at the victim's residence in order to drink alcohol" and "[t]here was nothing to suggest that [he] had any reason to rob the victim or that he took the truck for any reason other than to continue partying." Martinez claims that "[i]f [his] intention was to murder the victim in order to facilitate a robbery, then logic would indicate that there would have been missing valuables from the victim's residence" but that, in fact, there was no evidence of anything missing from Cardenas's house except for the truck.

We disagree that the evidence was insufficient to show a nexus between Cardenas's killing and the theft of his truck. *See id.* We first note that Martinez is incorrect in claiming that the undisputed reason for his presence at Cardenas's house was "to drink alcohol"; in fact, Martinez himself stated to police that he was there to "fix[ Cardenas's] starter engine," and Cardenas's autopsy showed no traces of alcohol. In any event, a jury may generally infer intent from the conduct of the accused. *See, e.g., Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). More specifically, the Texas Court of Criminal Appeals has repeatedly held that evidence will be sufficient to show that a murder took place "in the course of" the commission of a robbery "if the State proves the robbery occurred immediately after the commission of the murder." *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989) (citing *Huffman v. State*, 746 S.W.2d 212 (Tex. Crim. App. 1988); *Lincecum v. State*, 736 S.W.2d 673 (Tex. Crim. App. 1987); *Demouchette v. State*, 731 S.W.2d 75 (Tex. Crim. App. 1986); *Fierro v. State*, 706 S.W.2d 310, 313 (Tex. Crim. App. 1986); *Riles v. State*, 595 S.W.2d 858 (Tex. Crim. App. 1980)). Here, evidence showed that Martinez took Cardenas's truck—

11

which Cardenas "loved" and "wouldn't lend . . . to anybody"—at around the same time as Cardenas was killed. Evidence also showed that, between the time Martinez fled to Mexico and the time the truck was recovered by police, the truck's license plates, rims, and tires had been changed. From this evidence, a rational juror could have reasonably inferred that Martinez intended to obtain control of Cardenas's truck at the time he killed Cardenas. Martinez's third issue is overruled.

## B.    Jury Charge Error

By his first issue, appellant contends that the trial court committed reversible error by instructing the jury that it could convict if it found that an "unknown object" was used in the commission of the offense.

### 1.    Standard of Review and Applicable Law

Following a felony trial, the trial court must deliver to the jury a "written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007).

Defense counsel did not object to the jury charge at trial. When reviewing unobjected-to jury charge error, we must first determine whether the charge was erroneous. *See Tolbert v. State*, 306 S.W.3d 776, 779 (Tex. Crim. App. 2010). If we determine that error occurred, we then consider whether the error caused egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Egregious harm will be found only if the error deprived the defendant of a fair and

impartial trial. *Ex parte Smith*, 309 S.W.3d 53, 63 (Tex. Crim. App. 2010) (citing *Almanza*, 686 S.W.2d at 171).

### 2. Analysis

The application paragraph of the jury charge in this case stated as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about NOVEMBER 3, 2010, in Hidalgo County, Texas, the Defendant, VALENTIN MARTINEZ, did then and there intentionally cause the death of an individual, namely, YSRAEL CARDENAS, *by stabbing him with a knife or with an object unknown to the grand jury*, and the defendant was then and there in the course of committing or attempting to commit the offense of robbery of YSRAEL CARDENAS, then you will find the Defendant guilty of the offense of CAPITAL MURDER, as charged in the indictment . . . .[7]

(Emphasis added.) The paragraph tracked the indictment, which contained two paragraphs charging capital murder—one alleging that Martinez used a knife and one alleging that Martinez used "an object unknown to the grand jurors . . . ." Martinez argues that "[t]he evidence at trial did not support the proposition that the killer used an object unknown to the grand jury."

Martinez relies on *Sanchez v. State*, in which the Texas Court of Criminal Appeals held that the trial court erred by instructing the jury that it could convict the defendant of murder if it found he caused the death of the complainant "by manner and means to the Grand Jurors unknown" because the "[t]he evidence established that the cause of the complainant's death was asphyxia." 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) (citing *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004) (noting that jury instructions must "apply th[e] law to the facts" adduced at trial)). The trial court in *Sanchez* charged the jury on four different theories, including two which

---

[7] The charge also contained application paragraphs for the lesser-included offenses of murder and robbery. The murder paragraph also instructed the jury that it may convict if Martinez caused Cardenas's death "by stabbing him with a knife or with an object unknown to the grand jury . . . ."

13

alleged unknown manner and means, but the court of criminal appeals held that "[t]he trial court's instructions should have reduced the four theories to the two theories with the specified manner and means that were supported by evidence at trial." *Id.* at 774. The Court held that "the two theories with the unknown manner and means were unnecessary surplusage as they were unessential to the charged offense of murder because the indictment and jury instructions had also alleged two other alternatives for that same offense." *Id.*

Here, the "manner" of Cardenas's death was undisputed—he died of stab wounds to the torso—and Martinez argues that the "means" of his death was also conclusively established. Martinez notes that the autopsy pathologist repeatedly referred to a "knife" as the instrument she assumed caused Cardenas's injuries; and he notes that the only potential murder weapon introduced as evidence was the knife recovered from Cardenas's kitchen which had traces of Cardenas's blood on it. The State contends that this case is more like *Moulton v. State*, in which the court of criminal appeals found that an instruction on unknown manner and means was not erroneous because, under the evidence adduced at trial, "the crime scene does not point to a conclusive list of possibilities" and so "there is unlimited information that may be unknown." 360 S.W.3d 804, 810 (Tex. Crim. App. 2013). Therefore, the State contends, "the indictment correctly alleged an unknown manner and means as well as all options supported by the evidence." *Id.*

Assuming, but not deciding, that the evidence did not support the challenged instruction, we nevertheless find that any error would not be reversible because Martinez has not demonstrated that he suffered egregious harm. In *Sanchez*, the court

14

of criminal appeals noted that, "[w]hen a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict stands if the evidence is sufficient to support a finding under any of the theories submitted." 376 S.W.3d at 775; *see Herrera v. State*, 367 S.W.3d 762, 776 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding, where defendant was accused of causing bodily injury to a child, that "the evidence supports a conviction based upon a finding that appellant committed the offense by shaking, throwing, or dropping" the victim and that "[t]he jury could have convicted on any one of these theories without ever reaching the 'unknown' language"). The *Sanchez* Court then found that the error in the jury charge was harmless, in part because "[a]ll four of the alternatives for convicting appellant required the jury to be convinced beyond a reasonable doubt that appellant caused the death of the complainant, and the evidence at trial established this." 376 S.W.3d at 775; *see id.* at 773 (citing *Ngo v. State*, 175 S.W.3d 738, 746 n. 27 (Tex. Crim. App. 2005)) ("Neither the manner (the *actus reus*) nor the means (the 'instrument of death') need to be agreed upon unanimously by a jury . . . [t]he jury need only unanimously agree that appellant caused the death of the complainant."). Crucially, the *Sanchez* Court applied the less stringent harm analysis appropriate for error that has been preserved at trial. *See id.* at 775 ("Had appellant failed to preserve the jury-charge error, then we would have reviewed the record for egregious harm."). Applying, as we must in this case, the stricter standard prescribed for unpreserved error, we find that Martinez has not shown egregious harm because, as we have already held, the evidence was sufficient for the jury to convict on the theory that Martinez used a knife. *See id.*; *Herrera*, 367 S.W.3d at 776.

Martinez's first issue is overruled.

### III. Conclusion

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of December, 2013.