Troy Albert KUNKLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 69501.

Court of Criminal Appeals of Texas,
En Banc.

June 18, 1986.

Certiorari Denied July 3, 1989.
See 109 S.Ct. 3259.

436

Richard W. Rogers, III, Corpus Christi, for appellant.

Grant Jones, Dist. Atty. and Leslie Poynter, Asst. Dist. Atty., Corpus Christi, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is an appeal taken from a conviction for capital murder. V.T.C.A. Penal Code, § 19.03. The death penalty was imposed after the jury answered affirmatively the special issues submitted under Art. 37.071, V.A.C.C.P. Appellant brings twelve grounds of error before this Court. We affirm.

Appellant's first eight grounds of error concern the laws regarding accomplice witnesses, whether one of the witnesses was an accomplice witness, and the trial court's charge to the jury on these matters. In order to dispose of these grounds, as well as other grounds raised by appellant, a brief recitation of the facts is necessary.

The record shows that on August 11, 1984, at approximately 6:00 p.m., appellant and his three co-defendants, Lora Lee Zaiontz, Russell Stanley and Aaron Adkins, left San Antonio to go to Corpus Christi. Appellant was 17 years old at the time of the offense. Tom Sauls, who was not indicted for any offense stemming from these activities, was also present. Sauls believed that the five were going to the beach to "party." All five individuals were under the influence of alcohol and L.S.D. at the time.

While en route to their destination, Stanley removed a loaded .22 caliber pistol from the glove compartment of the car, and fired it into the air while asking Adkins if he wanted to make money. Sauls told Stanley that "guns and acid don't mix," whereupon Stanley returned the gun to the glove compartment. Stanley removed the gun several other times.

Stanley and Adkins discussed committing robbery, and several times they slowed down to evaluate the chances of committing robbery upon the occupants of cars parked on the roadside. Although Sauls was within hearing distance of the discussions, he did not take part in them.

After arriving in Corpus Christi, the five drove to the beach. Appellant and Zaiontz, his girlfriend, kept to themselves while Stanley, Adkins and Sauls walked together and discussed robbing someone. Sauls was present, but did not contribute to the discussion.

The five left the beach and went to a convenience store to buy some beer. There, Stanley and Adkins robbed a man in a phone booth at gunpoint, and obtained seven dollars. Appellant and the other two persons remained in the car while the robbery took place, but could not see the actual robbery. Sauls did not participate in the robbery or share in its proceeds.

Next, the five left the convenience store and drove around looking for someone else to rob. They spotted Stephen Horton, the deceased, walking along the road. Adkins drove the car up beside Horton and Zaiontz asked Horton if he wanted a ride. Horton replied that he lived only a few blocks away, but was finally persuaded to enter the car. Horton got in the front seat, next to Zaiontz.

Stanley put a gun to the back of Horton's head and told him to give them his wallet. When Horton turned to look at Stanley, Zaiontz stuck her nails into the side of his face and told him to look forward. Appellant told Stanley to kill Horton, but Stanley refused because Stanley

did not believe that a killing was necessary. Stanley just wanted to "beat [Horton's] ass." Appellant then took the gun away from Stanley, stuck it up against Horton's head and said, "We're going to take you back here and blow your brains out." Adkins drove the car behind a skating rink, and appellant shot Horton in the back of the head. They opened the car door, pushed the body out, and Zaiontz took Horton's wallet. After shooting Horton, appellant stated "another day, another death, another sorrow, another breath."[1] Later, he also stated that the murder was beautiful.

After the murder, Sauls "freaked out on the whole thing and just sat there scared." Sauls stated that when he complained about the murder and said that they did not have to kill Horton, Stanley pointed the gun at Sauls' head and told him "[I]f you don't shut up, I am going to shoot you, too." Sauls stated that he "shut up, and ... just sat there and stared out the window the rest of the way home." The others acted as though nothing had happened as they drove back to San Antonio.

When they arrived in San Antonio, the five spent the night in the same place. The next day, they went to Canyon Lake. When asked why Sauls went with the others to the lake, he stated:

> "Because I didn't—well, I thought it would be awful strange for me not to, because we did everything else together. It was sort of keeping an eye on me so I wouldn't go to the police."

Sauls also testified that he was afraid to call the police. He was later contacted by Austin police officers, and told them everything that happened. Sauls was never arrested or charged with any offense arising out of the murder.

## 1. WAS SAULS AN ACCOMPLICE WITNESS AS A MATTER OF LAW?

In his first ground of error, appellant contends that the trial court erred in re-

fusing appellant's requested instruction to the court's charge on guilt or innocence that Tom Sauls was an accomplice witness as a matter of law. In support of his contention, appellant refers to the following evidence brought forth during trial. The record shows that Sauls knew about the robberies the others planned to commit but never protested prior to their commission. Sauls entered into discussions about the robberies and was "for it."[2] After the robbery of the man in the phone booth, Sauls wanted to know how much money was obtained. Appellant's attorney asked Sauls, before Horton got into the car, whether he would have told the others to "cool it" if he had seen "police lights." Sauls responded that he would have. Last, Sauls knew that money from Horton's murder was used to buy the provisions for the lake outing.

Appellant contends that this evidence clearly establishes that Sauls was an accomplice as a matter of law. Therefore, the trial court committed reversible error when it refused to charge the jury in accordance with the evidence.

The State responds to appellant's contentions by asserting that the record is devoid of any evidence that Sauls committed an act to promote or assist the others in the commission of any offense. Stanley testified that Sauls did not participate in the murder, was simply present at the scene of the offense, did nothing to help the others murder and rob Horton, did not voice an opinion as to the offense, never handled Horton's wallet, never encouraged the others to commit the offense, and did not aid, solicit or help any of the others in the commission of the offense.

When Sauls took the stand, he stated that he thought they had gone to the beach to "party" instead of to rob people. He added that when he told the others his

---

1. The record shows that these words are lyrics from a song.

2. Stanley indicated that Sauls was just going along with the discussions about the robberies, but could not remember any specific statements

Sauls made at the time. When appellant's attorney asked Stanley "And if you had to say, was [Sauls] for it or against it, based on what you say—", Stanley responded, "He was for it."

opinion, they told him to shut up. After the murder, Sauls stated that he "freaked out" over the incident. He stated that he did not encourage nor help the others rob anyone. When asked whether he served as a look-out during the murder, he stated "No." The State contends that this evidence shows that Sauls was not an accomplice as a matter of law or as a matter of fact.

██ An accomplice witness is someone who has participated with someone else before, during or after the commission of a crime. *Harris v. State*, 645 S.W.2d 447 (Tex.Cr.App.1983); *Russell v. State*, 598 S.W.2d 238 (Tex.Cr.App.1980), *cert. denied*, 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1981); *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979); *Arney v. State*, 580 S.W.2d 836 (Tex.Cr.App.1979); *Villarreal v. State*, 576 S.W.2d 51 (Tex.Cr.App.1978), *cert. denied*, 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979); *Ferguson v. State*, 573 S.W.2d 516 (Tex.Cr.App.1978), and cases cited therein at 523.

██ If the witness cannot be prosecuted for the offense with which the accused is charged, then the witness is not an accomplice witness as a matter of law. *Harris*, supra; *Carrillo*, supra; *Easter v. State*, 536 S.W.2d 223 (Tex.Cr.App.1976); *Morgan v. State*, 171 Tex.Cr.R. 187, 346 S.W.2d 116 (1961). Moreover, a witness is not an accomplice witness merely because he or she knew of the offense and did not disclose it, or even concealed it. *Russell*, supra; *Villarreal*, supra; *Easter*, supra. The witness' presence at the scene of the crime does not render that witness an accomplice witness. *Brown v. State*, 640 S.W.2d 275 (Tex.Cr.App.1982); *Russell*, supra; *Arney*, supra. Last, complicity with an accused in the commission of another offense does not make that witness' testimony that of an accomplice witness for the offense for which the accused is on trial if there is no showing of the witness' complicity in that offense. *Carrillo*, supra; *Caraway v. State*, 550 S.W.2d 699 (Tex.Cr.App. 1977).

██ If there is doubt whether a witness is an accomplice witness, the trial court may submit the issue to the jury even though the evidence weighs in favor of the conclusion that the witness is an accomplice as a matter of law. *Carrillo*, supra, and cases cited therein at 882.

██ In the case before us, there was no evidence that Sauls actually participated in the robbery and murder of the deceased. Sauls was not indicted for capital murder, nor any offense arising from the actions which took place on the night of the murder. Since there was no evidence that Sauls participated in the murder, he was not an accomplice witness as a matter of law.

Moreover, Sauls' presence at the scene of the murder does not render him an accomplice witness as a matter of law. Sauls' testimony indicated that he did not anticipate that the murder would occur, he did nothing to assist in the commission of the offense, and when he attempted to voice his objections he was silenced by the others on threat of injury. Last, even if Sauls knew about the robbery of the man in the phone booth, complicity in that crime would not necessarily mandate that he be deemed an accomplice witness.

The evidence does not support the conclusion that Sauls was an accomplice witness as a matter of law. Thus, the trial court did not err in failing to submit appellant's requested jury charge stating that Sauls was an accomplice witness as a matter of law. Appellant's first ground of error is overruled.

## 2. WAS A FACTUAL ISSUE RAISED AS TO WHETHER SAULS WAS AN ACCOMPLICE WITNESS?

Appellant also argues in his first ground of review that the facts raised a factual issue whether Sauls was an accomplice. Appellant argues that Sauls was an accomplice because he knew of the robbery of the man at the convenience store, he made no attempt to abandon the group when another robbery was planned, he looked for a victim, he allowed Horton to be induced into entering the car, he was on the lookout for police and would have warned the oth-

ers if he had seen any, he knew Stanley had a loaded gun, and he knew the group was serious.

First, we must excise from appellant's allegations in support of his claim those facts not found in the record. There is no evidence that Sauls "knew the group was serious." Also, as previously mentioned, when appellant's attorney asked Sauls if, before Horton got into the car, Sauls would have told the other's to "cool it" if he had seen police lights, Sauls said that he would have. When Sauls was asked specifically whether he acted as a lookout for the others, he responded "No." We find that Sauls' one response was not sufficient to show that he served as a lookout for the others during commission of the robbery and murder. Last, there is no evidence in the record to support the assertion that Sauls assisted the others in finding a victim. Rather, the evidence shows that Sauls did not participate in and was against the robbery and murder.

■ When this evidence is excluded, the remaining evidence referred to by appellant as support for his claim does not raise a factual issue as to whether Sauls was an accomplice witness. In order to be an accomplice witness, there must be some evidence of an *affirmative act* on the witness' part to assist in commission of the offense. Several cases support this rule.

In *Chappell v. State*, 519 S.W.2d 453 (Tex.Cr.App.1975), the defendant claimed that the trial court erred by failing to charge the jury that one of the State's witnesses was an accomplice witness as a matter of law, or as a matter of fact. The State called two witnesses who were in jail with the defendant at the time the offense was committed. The testimony of the witness the defendant argued should have been considered an accomplice witness showed that he may have been aware of the proposed escape, and did not inform the jailors. The witness repeatedly denied participation in the scheme. We held that since there was no evidence showing any affirmative act on the witness' part to assist in commission of the offense for which

the defendant was on trial, the trial court did not err in refusing the charge.

In *Caraway v. State*, 550 S.W.2d 699 (Tex.Cr.App.1977), the defendant was charged with a murder committed after a series of thefts. On appeal, the defendant contended that one of the witnesses was an accomplice. We held that although the witness had participated with the defendant in commission of the thefts, since there was no evidence of any affirmative act on the witness' part to assist in the murder, the witness was not an accomplice.

In *Ferguson v. State*, 573 S.W.2d 516 (Tex.Cr.App.1978), the defendant was charged with capital murder. On appeal, he argued that one of the witnesses was an accomplice because the witness furnished the murder weapon and hid it after commission of the offense, furnished a jacket worn during the robbery, at one time agreed to participate in commission of the offense, and spent money he knew was obtained during a robbery. We held that there was no evidence that the witness intentionally hid the weapon, nor was there evidence that he had aided in commission of the capital murder. Thus, he was not an accomplice witness.

These cases may be contrasted with the facts presented in *Harris v. State*, 645 S.W.2d 447 (Tex.Cr.App.1983). There, the defendant was charged with capital murder. The evidence showed that the defendant and another person had enlisted the aid of a truck driver in jump-starting their car. While the truck driver was standing in front of his truck, the defendant pushed the man in the chest, and after he fell, the defendant pinned him down. Then, the defendant killed the man by repeatedly striking him in the head with a car jack. During the killing, the witness the defendant contended was an accomplice witness got into the deceased's truck. The defendant argued on appeal that the trial court had erred in failing to submit to the jury the question of whether the witness was an accomplice witness. The Court stated:

"The evidence in the present case showed that Rencher [the witness] was present and fled the scene of the murder

with the others in the deceased's vehicle, listening to the radio and tape deck. Furthermore, she had overhead (and may or may not have understood) what was about to happen. She wound up with blood on her, took possession of the truck for the killers while the killing was in progress, willingly remained with them, was arrested and held for six months, attempted to escape from custody, expressed the belief at one point that she was guilty, made a deal with the prosecution for her testimony and gave inconsistent accounts of what had transpired.

. . . . .

The jury should have been so charged on whether Rencher was an accomplice and whether her testimony was corroborated. Her actions and testimony and the evidence as a whole, *especially her actions in taking possession of the truck without permission or instruction by anyone,* while the killing was still in progress, raised the fact issue.…" (emphasis added).

*Id.* at 458–9.

■ Thus, as shown by the preceding cases, there must be some evidence of an affirmative act by the witness committed to assist in commission of the offense before that witness may be considered an accomplice. In the case before us, however, there was no such evidence. Even if Sauls knew about the prior robbery, failed to abandon the group, permitted Horton to be induced into entering the vehicle, and would have told the others (but did not) if he saw police, he would not be shown to have committed an *affirmative act* in order to assist in the murder. In the absence of such an act, he cannot be an accomplice witness, even as a matter of fact.

Also, any connection Sauls had with the robbery of the man at the convenience store would not render him an accomplice witness to Horton's murder in the absence of some evidence showing Sauls' complicity with commission of the murder. See *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); *May v. State,*

618 S.W.2d 333 (Tex.Cr.App.1981), vacated on other grounds, 454 U.S. 959, 102 S.Ct. 497, 70 L.Ed.2d 374 (1981), affirmed on remand because of Governor's commutation of sentence to life, 632 S.W.2d 751 (Tex.Cr.App.1982); *Caraway,* supra at 702, citing *Easter,* supra.

Thus, the evidence fails to raise a fact question as to whether Sauls was an accomplice witness. The trial court would not have erred in refusing to charge the jury on whether Sauls was an accomplice witness as a matter of law or as a matter of fact. Appellant's first ground of error is overruled.

## APPELLANT'S REMAINING GROUNDS

■ In his second ground of error, appellant contends that the evidence is insufficient to sustain the conviction because there was no corroboration of accomplice witness Sauls' testimony. Since we have determined that Sauls was not an accomplice witness as a matter of law or fact, no corroboration of his testimony was necessary. We hold that his testimony, along with the other evidence adduced at trial, was sufficient to support the conviction. See *Thompson v. State,* 537 S.W.2d 732 (Tex.Cr.App.1976), and *Brown v. State,* 505 S.W.2d 850 (Tex.Cr.App.1974). Appellant's second ground of error is overruled.

■ In his third ground of error, appellant contends that the trial court erred by overruling appellant's objection to the charge because the charge failed to instruct the jury on the types of criminal responsibility set out in V.T.C.A. Penal Code, § 7.02(a)(1), (a)(3) and (b), which appellant contends were applicable to the issue of whether Sauls was an accomplice witness.

The law regarding criminal responsibility is set forth in V.T.C.A. Penal Code, § 7.02, which states:

(a) A person is criminally responsible for an offense committed by the conduct of another if:

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible per-

son to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

The relevant portion of the charge read to the jury stated:

### 6.

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Mere presence alone will not constitute one a party to an offense.

An accomplice as the word is here used means anyone connected as a party, as defined above, with the crime charged.

You are instructed that a conviction cannot be had upon the testimony of an accomplice unless the jury first believe [sic] that the accomplice's testimony is true and that it shows the Defendant is guilty of the offense charged against him, and even then you cannot convict unless the testimony of the accomplice is

corroborated by other evidence tending to connect the Defendant with the offense charged. The corroboration, if any, is not sufficient if it merely shows the commission of the offense, but it must tend to connect the Defendant with its commission."

### 8.

"If you find from the evidence beyond a reasonable doubt that Troy Kunkle, in Nueces County, Texas on or about the 12th day of August, 1984, did then and there intentionally cause the death of Stephen Horton by shooting him with a firearm in the course of committing robbery of Stephen Horton, but you find from the evidence beyond a reasonable doubt that the witness, Tom Sauls, did not know of the intent, if any, of the said Troy Kunkle to cause the death of Stephen Horton by shooting him with a firearm in the course of committing robbery of Stephen Horton or, even if Tom Sauls had knowledge of such intent of Troy Kunkle, that Tom Sauls did not act with intent to promote or assist the commission of the offense by Troy Kunkle by soliciting, encouraging, directing, aiding, or attempting to aid Troy Kunkle to commit the offense, then you will find the witness, Tom Sauls, was not an accomplice to the offense of capital murder.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find that the witness, Tom Sauls, was an accomplice to the offense of capital murder."

### 9.

"If you find from the evidence that the witness, Tom Sauls, was an accomplice, or you have a reasonable doubt thereof, then you are instructed that if you find beyond a reasonable doubt that an offense was committed, you cannot convict the Defendant, Troy Kunkle, of capital murder upon the testimony of Tom Sauls unless you first believe that his testimony is true and shows that the Defendant is guilty as charged; and even then you cannot convict the Defendant unless you

further believe that there is other evidence in this case, outside the testimony of Tom Sauls, tending to connect the Defendant with the offense committed, if you find that an offense was committed and tending to establish that the Defendant, Troy Kunkle, intentionally caused the death of Stephen Horton by shooting him with a firearm in the course of committing robbery of Stephen Horton, and then from all the evidence you must believe beyond a reasonable doubt that the Defendant is guilty of capital murder. The corroboration, if any, is not sufficient if it merely shows the commission of the offense, but it must tend to connect the Defendant with its commission and tend to establish that the Defendant intentionally caused the death of Stephen Horton by shooting him with a firearm in the course of committing robbery of Stephen Horton."

The portion of the charge read to the jury on the issue of criminal responsibility followed that set forth above in § 7.02(a)(2). We must therefore determine whether the trial court erred in failing to submit the other three bases for criminal responsibility.

The record is devoid of evidence that would raise issues of criminal responsibility under § 7.02(a)(1) or (a)(3). Thus, the trial court did not err by failing to instruct the jury on these theories of criminal responsibility. See generally *Guerrero v. State*, 487 S.W.2d 729 (Tex.Cr.App.1972). Also, we find that there was no evidence raising the possibility that Sauls conspired with the others to rob the deceased, and that the murder should have been anticipated as a result of the robbery. Thus, the trial court did not err by failing to instruct the jury as requested by appellant. The trial court charged the jury (out of an abundance of precaution it turns out, since we have found, *ante*, that refusal to give an accomplice witness charge in this case would not have been error) on the only theory of criminal responsibility arguably relevant to the facts of the case, and the charge given was adequate to fully protect appellant as to the matters included. See *Skidmore v. State*, 530 S.W.2d 316 (Tex.Cr.App.1975).

We therefore overrule appellant's third ground of error.

In his fourth ground of error, appellant contends that the trial court erred by overruling appellant's objection to the charge because the charge did not set forth the correct law as to whether Sauls was an accomplice witness since the jury could find that he was involved as a party in the aggravated robbery and murder but still not find Sauls an accomplice for the purposes of the accomplice witness corroboration rule. In his fifth ground of error, appellant contends that the trial court erred by overruling appellant's objection to the charge because the charge required the jury to find appellant guilty of capital murder before it could consider and find Sauls an accomplice witness. In his sixth ground of error, appellant contends that the trial court erred by failing to include language in the definition of "accomplice witness" indicating that the definition included all persons connected with the crime by unlawful act **or omission on their part transpiring either before or** during the commission of the offense. [matter refused shown with emphasis]. Appellant contends that the charge given contained too narrow a standard since an accomplice witness may be someone acting before the commission of a crime, according to *Ferguson*, supra. In appellant's eighth ground of error, he contends that the trial court erred in refusing to instruct the jury on Sauls' potential accomplice witness status under V.T.C.A. Penal Code, § 7.02(a)(3), which concerns persons with a duty to prevent commission of an offense who fail to prevent commission of the offense in order to assist in its commission. Since we have found that the evidence did not raise an issue regarding whether Sauls was an accomplice witness, no error is presented in these grounds, and they are overruled.

In his seventh ground of error, appellant contends that the trial court erred in refusing to charge the jury on the law of criminal responsibility under Sec. 7.02(b), supra, which concerns a felony committed in the course of carrying out a conspiracy. As previously discussed, the evidence did

not raise any issues regarding whether Sauls was involved in a conspiracy, whether the capital murder was committed in furtherance of the conspiracy, and whether commission of the capital murder should have been anticipated. Thus, the trial court did not err in refusing appellant's requested instruction. Appellant's seventh ground of error is overruled.

In his ninth ground of error, appellant contends that the trial court erred by overruling appellant's motion for mistrial when the prosecutor referred to facts outside of the record during final argument, and also argues that the trial court erred in overruling his objection to additional reference to facts outside the record. Appellant objects to the following statement made by the prosecutor during final argument of the guilt/innocence stage of trial:

> "It is not decided that Tom Sauls was not an accomplice based upon what Tom Sauls said alone. Think back about all of the evidence. This is something that either intentionally or unintentionally has not been brought to your attention by defense counsel. Sergeants Messer and Broughton discussed the facts of this case and received information from other sources."

Appellant's objection that the prosecutor was going outside of the record was sustained, and the trial court instructed the jury to disregard the statement; however, appellant's motion for mistrial was denied.

The State has responded to this ground of error, and indicates that the record supports the prosecutor's statement. When the prosecutor examined Sergeant J. Messer, on direct examination, the officer testified that he had traveled to San Antonio with another sergeant, and met with a San Antonio police officer and Texas Ranger. There, they discussed the crime committed in Corpus Christi, and developed a list of four suspects and one potential witness, Tom Sauls. Later, Messer located Sauls in Austin. Appellant made no objection to this testimony.

We find that the statements made by the prosecutor were based upon evidence presented to the jury, and did not interject facts not supported by the record. C.f. *Cannon v. State*, 668 S.W.2d 401 (Tex.Cr.App.1984), *Jordan v. State*, 646 S.W.2d 946 (Tex.Cr.App.1983) and *Berryhill v. State*, 501 S.W.2d 86 (Tex.Cr.App.1973). Moreover, even if the statements were improper, since the trial court sustained the objection, any error would constitute reversible error only if it was manifestly improper or extreme. *Brandley v. State*, 691 S.W.2d 699 (Tex.Cr.App.1985), and cases cited therein at 712–713; *Franklin v. State*, 693 S.W.2d 420 (Tex.Cr.App.1985), and cases cited therein at 429. We find that the statements were not of the tenor to mandate reversal. Appellant's ninth ground of error is overruled.

In his twelfth ground of error, appellant contends that the trial court erred in overruling appellant's motion challenging "death qualification" voir dire questions. Appellant requested the trial court to prevent the State from qualifying the potential jurors based upon their feelings toward capital punishment. Appellant argues "The Court overruled the motion, ..., and thereby manifested the Court's intent to disqualify from the jury those jurors who held absolute scruples against the death penalty." Appellant's brief, p. 38.

Appellant refers us to no jurors who were placed on the jury against his wishes, or any improper action by the trial court in refusing to grant appellant's challenges. Thus, no harm is shown. Also, the State is permitted to examine potential capital murder jurors regarding their attitudes and beliefs regarding the death penalty. Art. 35.16(b)(3). See also *Chambers v. State*, 568 S.W.2d 313 (Tex.Cr.App.1978), *cert. denied*, 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979) and *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976), *cert. denied*, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977). Appellant's twelfth ground of error is overruled.

In his tenth ground of error, appellant contends that there is insufficient evidence to prove beyond a reasonable doubt that appellant caused the death of the deceased deliberately. See Art. 37.071(b)(1),

V.A.C.C.P. Appellant argues that the evidence shows that he was acting under the influence of L.S.D. at the time the offense was committed and also shows that L.S.D. renders a person unaware of the consequences of his acts and prevents a person from acting with careful, thorough consideration. Appellant concludes that while drug intoxication does not free him from criminal responsibility, it does preclude the State from proving his conduct was deliberate beyond a reasonable doubt: where there is no evidence to show that appellant's conduct cannot be attributed to the effects of the drug, there can be no finding that his conduct was deliberate. Appellant cites no authority for his conclusion.

In considering appellant's claim that the evidence was insufficient to show that he acted deliberately, we must evaluate the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have made the finding beyond a reasonable doubt. *Goodman v. State*, 701 S.W.2d 850 (Tex.Cr.App.1985), at 866, citing *DeGarmo v. State*, 691 S.W.2d 657 (Tex.Cr.App.1985) and cases therein at 661.

The term "deliberately" is not defined by statute, and is therefore taken and understood in its normal use in common language. *Stewart v. State*, 686 S.W.2d 118 (Tex.Cr.App.1984). The State is not required to prove premeditation or that the defendant carefully weighed, considered or studied the situation before killing the deceased in order to support a finding that he acted deliberately. *Smith v. State*, 676 S.W.2d 379 (Tex.Cr.App.1984). See also *Goodman*, supra, and *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr.App.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). In *Cannon v. State*, 691 S.W.2d 664 (Tex.Cr.App.1985), we stated that in order to find that the defendant acted deliberately, there needed to be the moment of deliberation and the determination to kill.

In the case at bar, the facts show that appellant ordered Stanley to shoot Horton, and when Stanley declined to do so, appellant grabbed the gun away from him, point-

ed it to the back of Horton's head, and stated "we are going to take you back here and blow your brains out." Afterwards, while still sitting in the car, appellant shot Horton in the back of the head. We find that a rational trier of fact could have found beyond a reasonable doubt that based on the facts, appellant acted deliberately.

With regard to appellant's claim that the effects of the drugs he ingested rendered him incapable of acting deliberately and precluded a conviction for capital murder, we find that the jury was the sole trier of fact in the proceedings. Thus, it could accept or reject any of the evidence regarding the effects of L.S.D. on appellant at the time of the murder. The effects of L.S.D. on appellant, whether considered by the jury or not, do not require this Court to change its standard of review. There was sufficient evidence, despite the evidence of drug use, to support the jury's finding that appellant acted deliberately. Appellant's tenth ground of error is overruled.

In his eleventh ground of error, appellant contends that there was insufficient evidence to prove beyond a reasonable doubt that there was a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. Appellant argues that since the instant offense was the only act of violence shown to have been committed by him, there is insufficient evidence to support the jury's finding that he would be a continuing threat to society. In considering appellant's contention, we use the same standard of review set forth in our disposition of the preceding ground of error: we must evaluate the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have made the finding beyond a reasonable doubt. *Fierro v. State*, 706 S.W.2d 310 (Tex.Cr.App.1986); *Goodman*, supra; *Cannon*, supra; *Barrow v. State*, 688 S.W.2d 860 (Tex.Cr.App. 1984).

When deciding whether a defendant will commit future acts of violence that would constitute a continuing threat to society, the jury may consider all of the

evidence raised at the guilt stage of trial. *Fierro*, supra, and cases cited therein at p. 319. The circumstances of the offense and the facts surrounding it may provide greater probative evidence than any other evidence regarding this issue presented at the penalty phase of the trial. *Id.* See also *Russell v. State*, 665 S.W.2d 771 (Tex.Cr. App.1983); and *Mitchell v. State*, 650 S.W.2d 801 (Tex.Cr.App.1983).

■ In the case at bar, during the punishment stage of trial, the State called Walter Howard, an assistant principal of the high school appellant attended. Howard stated that he had had several personal contacts with appellant when appellant committed infractions, such as truancy, smoking and classroom disruptions. He added that appellant had a general disregard for school rules, was characterized as a habitual truant, and would become hostile and belligerent when confronted with his violations. Appellant was transferred out of the high school to Center School, which was designed to deal with children with emotional problems. When asked if Howard had formed an opinion as to whether appellant would commit acts of violence in the future, he stated that he considered appellant to be a threat to society.

The State called Frances Evans, the principal of Center School, to testify. Evans testified that she had taught for a number of years, obtained a degree in counseling and counseled students for a number of years, and then obtained an administrator's certificate. She stated that appellant had undergone a battery of psychological tests in order to be transferred to Center School, and had difficulty following rules. Evans added that based upon her knowledge, and the predictors often used in schools and business, appellant would have "trouble adhering to the regulations that are placed on people on a regular basis."

Next, the State called David Abbott. Abbott was at the time of trial employed by the Bexar County Adult Program Probation Department. Prior to that position, he served as a psychologist for the Bexar County Medical Psychiatric Department.

Before working for Bexar County, Abbott was employed as a psychologist for the Northeast Independent School District. Abbott held a Bachelor's and Master's degree in psychology from Southwest Texas State University, and a Doctorate of Psychology from Brigham Young University.

Abbott had worked with appellant when appellant was enrolled in the Center School. He testified that appellant had a very lackadaisical attitude, and was surly. When asked if he had formed an opinion whether appellant would commit future acts of violence, Abbott stated that based upon his observations of appellant:

> "He had a flagrant disregard for the rights and needs of others; did not seem to have internalized a value system that was consistent with what we—what I think the majority of society or community would espouse. He tended to blame other people, and problems would arise when he bounced up against rules. He would tend to blame other people, would show some anger,.... I would have to say that Mr. Kunkle would be at risk for future acts of aggression."

The State also called Edward Garza, who was employed as a sergeant/detective with the City of Corpus Christi Police Department. He testified that he assisted in appellant's arrest, and discovered a loaded .22 caliber revolver when appellant was frisked. The weapon was later found to have been stolen.

After the State rested during the punishment stage of trial, Appellant called his father to the stand, who testified that appellant had never been arrested, and that he would help and support appellant if appellant were sent to prison for life. Appellant also called his mother to the stand, who testified that she would help him if he received a life sentence.

In order to address appellant's contention, a brief discussion of several previous cases where we found the evidence insufficient to support the jury's finding of future dangerousness is appropriate. In *Roney v. State*, 632 S.W.2d 598 (Tex.Cr.App.1982), the defendant was charged with capital murder by murder committed in the course

of robbery. The facts show that on the date of the offense, Nguyen Viet Hoang and Man Thi Tran were working at a U–Totem store in Houston, when Trevor Haughton, who testified as an accomplice witness, entered the store. He left and returned with the defendant and Jesse Andrews. The defendant was armed with a sawed-off shotgun. The two victims were searched for money. Money was taken from the cash register, and one of the victims was ordered and was unable to open the safe. Haughton ran out of the store to check for cars, then ran to their car because he was scared. Andrews also ran to the car, and both men were in the car when they heard the shotgun blast. Tran was the only eyewitness to the murder to testify, and stated that Hoang had his hands raised when he was shot. The State called other persons who testified that the defendant had called the attention of others to what he had done and at one point laughed. He also claimed several times that he had been forced to kill the victim to defend himself.

On appeal, the defendant claimed that there was insufficient evidence to support the jury's finding that he would be a continuing threat to society. The State relied upon three factors to support the verdict: the gravity of the offense, the defendant's attitude, and an aggravated robbery committed minutes before the primary offense. The defendant introduced mitigating evidence showing his young age, the absence of psychiatric or character evidence, and his surrender three days after his mother was contacted by police.

This Court held that the evidence was insufficient to support the jury's finding that the defendant would be a continuing threat to society. First, although the crime was termed a "senseless murder," *id.* at 603, we stated:

"The facts of this offense, standing alone, do not carry the marks of a 'calculated and cold-blooded crime,' such as appeared in *O'Bryan v. State*, 591 S.W.2d 464, 480, where the defendant for months planned the candy poisoning of his own child to collect life insurance. To support a 'yes' answer to the second punishment issue, the evidence must show beyond a reasonable doubt that there is a probability appellant would commit criminal acts of violence that would constitute a *continuing* threat to society. To hold that the facts of *this* offense, standing alone, would support such a verdict, would mean that virtually every murder in the course of a robbery would warrant the death penalty. Such a construction would destroy the purpose of the punishment stage in capital murder cases, which is to provide a reasonable and controlled decision on whether the death penalty should be imposed, and to guard against its capricious and arbitrary imposition. [citations omitted]"

*Id.*

We considered the evidence concerning the defendant's attitude and held that it made no significant contribution toward discharge of the State's burden of proof. Also, the defendant had repeatedly claimed that he "had to kill" to defend himself. Last, we found that the extraneous robbery committed minutes before the primary offense was part of a one-night crime spree, and did not establish repetition of criminal conduct. We concluded that when the State's weak evidence on the issue of future dangerousness was considered with the factors relied upon by the defendant, the State had not met its burden of proof to support a finding that the defendant would be a continuing threat to society.

In *Wallace v. State*, 618 S.W.2d 67 (Tex. Cr.App.1981), the defendant was charged with capital murder, and received the death sentence. The evidence showed that the defendant did not kill the victim, rather his companion committed the actual murder. The defendant admitted that he had discussed possible murders for hire, but denied that he had committed any. In his confession, he admitted that he had participated in a thwarted attempt to commit robbery a few weeks before the offense for which he was on trial. The defendant also admitted that he had a military violation for being absent from his place of duty.

On appeal, the defendant contended that there was insufficient evidence to support

an affirmative response to the second special issue. This Court agreed, and stated:

"There was no other evidence presented that could be considered relevant to the issue of future violent conduct. Specifically, there was no evidence of prior convictions, no prior acts of violence, no character evidence, no psychiatric evidence. Although the circumstances of the murder may be sufficient to support a death penalty, *Duffy v. State*, Tex.Cr. App., 567 S.W.2d 197, this is not such a case. We are of the opinion that the evidence is insufficient to support the 'yes' finding on the issue of future violent conduct. Consequently the death penalty must be set aside."

*Id.* at 69.

In *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980) (opinion on original submission), the defendant was found guilty of capital murder by murder committed in the course of kidnapping. The evidence presented at the guilt stage of trial showed that Johnny Turner, Jr., a six-year-old boy, had been playing in his yard, but later, when his mother called him for dinner, he could not be found. A neighbor testified that he saw Johnny with appellant in a white pick-up truck behind the house. A school bus driver also testified that she saw Johnny with appellant in a white pick-up truck. She watched as they drove in the direction of Yellow House Canyon, where Johnny's body was later found. Two other witnesses corroborated the bus driver's testimony.

An acquaintance of the defendant testified that he and a fellow worker bought a six-pack of beer, and drove to a secluded spot on a country road which was near a road leading into Yellow House Canyon. As they were leaving, they saw the defendant coming down the road, from the direction of the canyon. The defendant was alone in the truck, and was driving at a high rate of speed. Another witness testified that he found tire marks in the dirt on

the road near where the body was found which matched the tires on the defendant's truck.

The defendant did not testify nor offer any evidence in his behalf. At the punishment stage of trial, both the State and the defendant rested without presentation of any evidence. In finding that there was insufficient evidence to support the jury's affirmative response to the second special issue, we stated:

"There was no evidence, per se, of any extraneous criminal acts; there was no psychiatric evidence offered; there was no evidence of any prior criminal convictions nor was any character evidence introduced.

. . . . .

After careful consideration of the entire record and the several factors which the jury could consider [as set out in *Hovila v. State*, 562 S.W.2d 243, 249 (Tex.Cr.App.1978) ],[5] we are led to the inescapable conclusion that the evidence was insufficient to support an affirmative answer to the second issue."

*Brasfield*, supra at 294. The death penalty was therefore reformed to life imprisonment.

In *Warren v. State*, 562 S.W.2d 474 (Tex. Cr.App.1978), we reversed the jury's affirmative finding that the defendant would constitute a continuing threat to society stating:

"The facts of the instant case reflect a criminal act of violence, but it was not a calculated act. The State's evidence in the form of appellant's confession shows that appellant went unarmed to the deceased's house for the purpose of burglarizing the house. There he found a pistol, which he placed in his coat pocket. He was surprised in the bedroom by the deceased, whom he did not know. When the deceased pulled a gun, yelled at him and threatened to kill him, he shot the

---

5. "[T]he jury could consider whether ... [the defendant] had a significant criminal record; whether his prior criminal conduct was severe; whether he was young or old; whether he was acting under duress or the domination of anoth- er at the time of the commission of the offense; and whether he was under an extreme form of emotional pressure not far removed from insanity." *Hovila*, supra at 249.

deceased. The confession reflects appellant was so scared 'he was going to shoot us that I didn't know what I was doing.... I don't remember shooting him but I was the only one that had a gun.' The appellant's story that the deceased pulled a gun is supported by other evidence that the deceased was known to carry a pistol and the fact that his .25 caliber pistol was found at his feet when his body was discovered.

Thus, there was no evidence of past violence, no evidence that violence was initially intended during the burglary and no evidentiary predictions of future violence."

*Id.* at 476–77.

The holdings in these cases may be summarized in this way. We first look at the facts of the crime itself. If the offense was shown to be sufficiently cold-blooded or calculated, then the facts of the offense alone may support a finding that the defendant will pose a continuing threat to society. If, however, the facts of the case were not sufficiently compelling, we look for other evidence to support the jury's finding, such as psychiatric evidence, character evidence, prior criminal record, prior extraneous offenses, and possible mitigating factors such as the defendant's youth or state of mind at the time of the offense.

In the case before us, the State relied upon the following factors to support an affirmative answer to the second special issue. The facts of the offense show that the murder was calculated, completely unprovoked, and entirely unnecessary. Appellant searched for a victim to rob and kill, happened upon the unfortunate Stephen Horton, enticed him into the car, informed him that he was about to be killed before he even knew how much money Horton had, shot Horton while he sat inside the car, disposed of the body, and then drove back to San Antonio as though nothing had happened.

In addition to the facts of the offense, however, the State presented evidence at the punishment stage of trial establishing appellant's behavior and attitude problems in school, his disregard for rules and the

rights of others, psychological evidence that he would be likely to continue to commit future acts of aggression, and his possession of a loaded .22 caliber gun, similar to that used to murder Horton, which had been reported as stolen.

We find that when the facts of the offense are considered in conjunction with the evidence presented at the punishment stage of trial, there was evidence from which a rational trier of fact could have found beyond a reasonable doubt that appellant would commit future acts of violence and be a continuing threat to society. C.f. generally *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Appellant's eleventh ground of error is overruled.

The judgment is affirmed.

CLINTON, Judge, dissenting.

Bitter irony marks disposition of the eleventh ground of error—the issue of future dangerousness.

We are told at the outset that appellant was then 17 years of age and at page 449 that there are "possible mitigating factors such as the defendant's youth *or* state of mind...," but if age of this appellant is given consideration anywhere in the opinion I have yet to find it. See *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).

The opinion recites and holds against appellant testimony of school officials and a probation officer as to his "behavior and attitude problems in school [and] his disregard for rules and the right of others." To the extent those are symptomatic of deeper emotional problems, such evidence is "at once damning and mitigating," *Stewart v. State,* 686 S.W.2d 118, 125 (Tex.Cr. App.1984) (Clinton dissenting, joined by Teague and Miller, JJ.). Despite those problems appellant managed his life without ever being arrested. Yet, none of that is carefully considered and evaluated in mitigation, as it should be, by merely "comparing" *Eddings v. Oklahoma,* supra.

Finally, the facts, inferences and rationale relied on by the opinion to demon-

strate that up to the moment appellant grabbed a gun from Stanley and threatened Stephen Horton, the deceased, Tom Sauls was not an accomplice as matter of law or fact would also serve to make appellant similarly blameless. From some mitigating elements mentioned in decisions discussed in the opinion it seems to me that one who has never before been arrested is entitled to have his first criminal act, albeit "senseless" and deliberate, examined in light of favorable mitigating circumstances and apparent extemporaneity of his conduct. Taking an unconstitutional approach at page 449, the Court does not do that.

I dissent.

TEAGUE, Judge, dissenting.

Because the majority opinion erroneously holds that Tom Sauls was not an accomplice witness as a matter of law and further erroneously rejects the complaints of Troy Kunkle, hereinafter referred to as the appellant, that relate to the jury charge, I am compelled to dissent.

It is now axiomatic that an "accomplice" is usually defined as a person who, as a party, was connected with the crime for which the accused is on trial. His connection may be by unlawful act or *omission* on his part. His complicity may be shown by acts of commission or *omission* transpiring either before, at the time of, or after the commission of the offense, and he need not be shown to be actually present or an actual participant in the crime that was ultimately committed. See Article 38.14, V.A.C.C.P., note 2.

If a person connected with the crime charged testifies for the prosecution against the accused, his testimony is considered to be so untrustworthy and corrupt that a conviction cannot be based solely upon that witness's testimony. The Legislature has written this age-old principle of law into our Code of Criminal Procedure. See Art. 38.14, supra.

It is also axiomatic that whether a person is an accomplice may be established either by direct or circumstantial evidence and, generally speaking, such must be decided on an ad hoc basis. See *Freeman v.*

*State*, 654 S.W.2d 450 (Tex.Cr.App.1983); *Wygal v. State*, 555 S.W.2d 465 (Tex.Cr. App.1977).

In summary, the term "accomplice" includes all *participes criminis*. Thus, the term "accomplice" should always be given a broad meaning. *Holladay v. State*, 709 S.W.2d 194 (Tex.Cr.App.1986). Of course, a member of a conspiracy to commit a criminal wrong is an accomplice provided that the conspiracy has not terminated prior to the commission of the object crime. *Singletary v. State*, 509 S.W.2d 572, 575 (Tex.Cr.App.1974). Under V.T.C.A., Penal Code, Section 7.02(b), "If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." If all of the facts and circumstances of the case reflect or indicate that a person who testifies for the prosecution *could have been charged with committing the offense for which the accused is on trial*, then that person is, as a matter of law, an accomplice witness, i.e., when, from all of the evidence, both direct and circumstantial, viewed from the standpoint of whether the person's complicity in the crime has been established, there exists no doubt as to the character of a witness as an accomplice, the trial court is under a duty to so instruct the jury and the failure to do so may constitute reversible error. *Burns v. State*, 703 S.W.2d 649, 651 (Tex.Cr.App.1985).

By virtue of the Legislature's enactment of V.T.C.A., Penal Code, Section 7.01, all *participes criminis* are now called "parties" to the offense.

In this instance, notwithstanding the fact that Tommy Sauls, a person who testified for the State, was connected with crimes that were committed in the City of Corpus Christi on the day in question by the gang of five he was with, the majority opinion erroneously finds and holds that he is not an accomplice witness as a matter of law to

any of those crimes, in particular, to the crime of capital murder for which the appellant was tried and convicted partly on the basis of Sauls' testimony. In fact, the majority opinion, erroneously, even finds and holds that Sauls was not even an accomplice witness as a question of fact.

The facts of this cause reflect that Sauls, who by his own admissions was a 17 year-old "speed, acid, and pot freak," with four other persons, one of whom was Jerry Russell Stanley, after getting high on L.S.D.[1] and alcohol, and armed with a pistol, entered into an agreement to take a pleasure trip in a small compact Datsun automobile to the sands of Corpus Christi in order "to party." At the time, Sauls was unemployed and penniless. One can infer from the record that the others, at least financially, were in no better shape.

Stanley, one of the gang of five, not only exhibited or displayed the pistol several times in Sauls' presence, he actually fired it in Sauls' presence, with Sauls exclaiming that Stanley should not do that because "Acid and guns don't mix." Sauls was thus put on notice that the gang of five had access to a deadly weapon.

Enroute to Corpus, all of the conspirators consumed and ingested more alcohol and acid.

The group's original objective in going to Corpus "to party" soon changed to the objective of finding someone to rob. I find that at that moment in time, what commenced as a conspiracy to commit the noncriminal offense of partying in Corpus became a conspiracy to commit the crime of robbery in Corpus.

I pause to point out that after the gang of five arrived in Corpus, Stanley, a member of the gang, almost immediately attempted to burglarize someone's automobile by using the pistol. Although Sauls did not participate in the attempted burglary, he was able to observe it. Thus, he was once again put on notice that any member of the gang had access to the pistol.

Soon thereafter, Stanley and another member of the gang of five, other than Sauls or the appellant, robbed an individual, who was then using a telephone in a phone booth at a convenience store. The robbers obtained the grand total of $7.00 from their victim. At that time, Sauls was nearby and observed what had happened. Although Sauls did not actually participate in the robbery, he became very much concerned over how much money was obtained from the victim, which, as noted, was $7.00.

Thereafter, the gang of five discussed finding another victim to rob. Concerning the proposed second robbery, Sauls himself testified:

"*We* went driving around. *We* were looking for somebody else to rob. *We* were looking for something [sic] else to rob to get some money." (My emphasis.)

The conspirators soon found another victim. This victim was not as fortunate as the conspirator's first victim, as this individual was not only robbed but also murdered. Taken from this victim was the grand sum of $13.00.

When the robbery-murder occurred, Sauls was then sitting in the backseat of the small compact Datsun vehicle the gang of five was then occupying. Sauls testified that when the victim was struggling with one of his co-conspirators, and shot by the appellant, he was oblivious to what was then happening in the front seat of the car, where the murder took place.

Stanley also testified for the State. In addition to what I have stated, Stanley himself testified that he was one of the two persons who committed the first robbery and, before the appellant murdered the second victim, he held the loaded pistol to the head of that person, but, because he was weak-kneed, he could not pull the trigger on the pistol, thus causing the appellant to intervene and kill the victim. Stanley also testified that he was encouraged to participate in the second robbery because he believed that Sauls had agreed to be part of the gang's agreement to rob that person and was also encouraged to participate in

---

1. The word "acid" is a shorthand rendition of the more technical term lysergic acid diethyla- mide, which is also usually referred to by only the initials L.S.D.

the second robbery because he believed that Sauls was going to be a lookout for the gang in order to warn them in the event that the police approached the gang's vehicle when they were committing the second robbery. Sauls himself testified that if a police car had approached the gang's vehicle he would have warned the others. Unfortunately for the second victim, the police never appeared on the scene when the second robbery that turned into a murder occurred.

Sauls testified that what he had witnessed "shocked" him.

The gang soon fled from Corpus back to San Antonio.

Notwithstanding that Sauls was "shocked" by what he had witnessed, he nevertheless remained with the gang. In fact, Sauls accompanied the gang the next day on another pleasure trip that the gang took, this time to Canyon Lake where the members of the gang spent proceeds that came from the last robbery. Sauls was a beneficiary of what was purchased, some more acid and alcohol, and the record clearly reflects that he knew that the money that was used to make the purchases came from the second robbery.

Several weeks later, when the police were zeroing in on Sauls, who had moved from San Antonio to Austin, he responded to the police's attempts to contact him, and gave them an exculpatory statement concerning his involvement in the murder. The record reflects that no charges were ever filed against Sauls, and Sauls denied that he had made any deals with the police or the prosecution in exchange for his testimony against the appellant.

Conspiracy is usually defined as an agreement between two or more persons to achieve an unlawful object or to achieve a lawful object by unlawful means. Thus, the offense of conspiracy is complete as soon as the criminal agreement is entered into. *Dill v. State*, 35 Tex.Cr. 240, 33 S.W. 126 (Tex.Cr.App.1895); *Witt v. State*, 146 Tex.Cr.R. 627, 177 S.W.2d 781 (Tex.Cr.App. 1944). In order to agree to an object of a conspiracy, the conspirator must have knowledge of that objective, but such knowledge may be inferred from the circumstances. See *United States v. Gallishaw*, 428 F.2d 760, 763 (2nd Cir.1970). Once the existence of a conspiracy has been established, only "slight evidence" is necessary to support a jury verdict that an individual was a member of the conspiracy. *United States v. Weber*, 437 F.2d 327 (3rd Cir.1970).

The existence of a conspiracy is usually proved in one or more of three ways: by circumstantial evidence, by the testimony of a coconspirator who has turned State's evidence, or by evidence of the out-of-court declarations or acts of a coconspirator or of the defendant himself. The gist of the conspiracy is the agreement, and most conspiracy convictions rest on inferences from circumstantial evidence. Thus, a conspiracy may be established by circumstantial evidence. *Rice v. State*, 121 Tex.Cr.R. 68, 51 S.W.2d 364 (1932). Also see 72 *Harvard Law Review* 920.

However, a defendant may not be guilty as a co-conspirator "by reason of mere association." *Nassif v. United States*, 370 F.2d 147, 153 (8th Cir.1966).

In this instance, the jury was not instructed on the law governing conspiracy, or on the fact that Sauls might have been a coconspirator, or that a conspirator can be an accomplice.

Although close, given the facts and circumstances of this case, I would find that a rational trier of fact could find that Sauls entered into an agreement with the other members of the gang of five to commit the second robbery and that the murder of the second victim was a foreseeable result of the agreement to rob. *Thompson v. State*, 514 S.W.2d 275, 276 (Tex.Cr.App.1974); Section 7.01, supra.

In *Fantroy v. State*, 474 S.W.2d 490 (Tex.Cr.App.1972), this Court, in discussing several of its past decisions, pointed out that the mere fact that one was seen with the actual hijackers, even though he did not actually participate in the hijacking, was sufficient to support that person's conviction as a principal to the commission of the crime. It was also pointed out that fleeing from the scene of the crime with the actual

gunman was sufficient to make one a principal to the crime. The Court then stated: "In the present case, the testimony of the appellant and co-defendants show that they knew each other in California. Appellant was not merely present with Wright in the store. They ran out of the store together, fled the scene together in an automobile and were arrested together. The sack containing the same amount of money taken in the robbery bore appellant's thumb print. We hold that the evidence was sufficient for the jury to conclude that appellant was a participant and a principal in the robbery." (492).

A recipient of proceeds from a robbery, who was present when the robbery was planned and executed, and fled with the actual hijackers, has been held by this Court to be an accomplice witness as a matter of law. See *Colunga v. State*, 481 S.W.2d 866, 869 (Tex.Cr.App.1972).

As easily observed, see supra, the incriminating direct and circumstantial facts in this cause are far more impressive than those adduced in *Fantroy*, supra, or *Colunga*, supra. Also see and compare *Drakes v. State*, 505 S.W.2d 892 (Tex.Cr. App.1974). And yet, the majority opinion holds that the circumstantial evidence that was presented in this cause is insufficient to make Sauls an accomplice witness as a matter of law. I disagree.

Given the facts and circumstances of this cause, I find that Sauls nicely fits within the following long established rule of this Court: "Where several persons are acting together in pursuit of an unlawful act, each one is liable for collateral crimes, even though unplanned and unintended and committed by other principals, if those crimes are the foreseeable, ordinary and probable consequences of the preparation or execution of the unlawful act. (Citations omitted.)" *Thompson v. State*, 514 S.W.2d 275, 276 (Tex.Cr.App.1974).

Assuming arguendo that Sauls was not an accomplice witness as a matter of law under the law of parties, the majority opinion is still erroneous in holding that "there was no evidence raising the *possibility* that

Sauls conspired with the others to rob the deceased...." (My emphasis.)

To the contrary, as I believe I have demonstrated, there is an abundance of evidence to establish this fact. One need only look at Sauls' own testimony and the testimony of Stanley, supra. This evidence, standing alone, would have been sufficient to permit the jury to find that Sauls entered into an agreement with the others to commit the second robbery, if not also the first robbery. The jury, however, was not instructed on this phase of the law, but was only instructed pursuant to the provisions of Section 7.02(a)(2). The appellant's complaints going to the jury charge go to his assertion that the jury should have been instructed that even though it found that Sauls did not do any affirmative act in the commission of the second robbery, nevertheless, if it also found that Sauls was a coconspirator to the robbery, then they could find that he was an accomplice witness to the capital murder that was committed, therefore necessitating that Sauls' testimony be corroborated before a conviction could be obtained based upon his testimony. See V.T.C.A., Penal Code, Section 7.02(b). The jury, however, was never given this option. I would hold that the trial court erred in refusing to so instruct the jury, and would further hold that this omission harmed the appellant.

For the above and foregoing reasons, I respectfully dissent.