COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

RAYMOND PAUL SMITH,                                )

                                                                              )              
No.  08-04-00218-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
176th District Court

THE STATE OF TEXAS,                                     )

                                                                              )             
of Harris County, Texas

Appellee.                           )

                                                                              )             
       (TC# 930,579)

                                                                              )

 

 

O
P I N I O N

 

Appellant Raymond
Paul Smith appeals his conviction for the offense of aggravated robbery with an
affirmative deadly weapon finding. 
Appellant waived his right to a trial by jury and elected a bench
trial.  Over Appellant=s not guilty plea, the trial court
found Appellant guilty of the offense. 
The trial court found the enhancement paragraph, alleging a prior
conviction for the felony offense of aggravated assault to be true.  The trial court assessed punishment at 60
years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice.[1]  On appeal, Appellant challenges the factual
sufficiency to sustain the conviction. 
We affirm.

 








FACTS

On the evening of
November 1, 2002, Appellant and two other men, all brandishing guns and wearing
stocking masks, confronted N.D. as she parked her car outside her home.  They ordered her out of the car and forced her
into her house.  Once inside, they ordered
the occupants to lay down on the floor and tied them up.  At gunpoint, N.D., her husband, her daughter,
and her daughter=s
boyfriend were ordered upstairs.  Over
the course of more than an hour, the gunmen sexually assaulted N.D. twice,
sexually assaulted N.D.=s
daughter twice, and ransacked the family=s
home before leaving with televisions, clothes, jewelry, and cash, in addition
to the family=s
minivan.  The family=s minivan was recovered by police in
the morning hours of November 2, burned and abandoned.

At trial, N.D.=s daughter stated that she identified
Appellant as one of her assailants from photographs shown to her at the
District Attorney=s
office.  N.D.=s
daughter stated that she was able to see Appellant=s
face when he briefly removed his mask. 
She identified Appellant in the courtroom as one of the assailants.  

The police
investigation of the crimes led to some suspects, two juveniles, Marqua Sauls
and Demarcus Collins.  Both juveniles
named Appellant as an accomplice.  The
police obtained a pocket warrant and arrested Appellant in the parking lot of
his apartment complex.  The police
recovered several stolen items from Appellant=s
girlfriend, the girlfriend=s
apartment, and from Appellant=s
apartment.  








State witness
Gerrori Jones, an incarcerated drug dealer, testified that one night in
November 2002, Appellant asked Jones to follow him while Appellant drove a van
to the Fifth Ward.  Appellant was
accompanied by Sauls and Collins.  Jones
waited as they drove down a dead-end street and burned the van.  They got into Jones=
car and he dropped them off at his apartment complex.  They gave Jones sixty dollars and told him
that they had robbed some Chinese people. 
According to Jones, Appellant, Sauls, and Collins had left the property
that was in the van, two televisions and some jackets, by the side of Jones= apartment complex in an alleyway.  Jones denied having sold the televisions to
Appellant.

Marqua Sauls
testified at trial.  Sauls admitted that
he committed the aggravated robbery and aggravated sexual assault and had pled
guilty to those charges.  Sauls named
Appellant and Collins as his accomplices and stated that the robbery was
Appellant=s
idea.  According to Sauls, only he and
Appellant had guns when they went inside the family=s
home.  Sauls stated that he was on drugs
that night and could not remember everything that happened, but he did remember
sexually assaulting the younger woman and stealing some property.  Sauls remembered that Appellant drove the
minivan after it was stolen and that Appellant gave AVonny@ fifty or sixty dollars to drive behind
them.  Sauls remembered that Collins and
Appellant set the van on fire while he sat in Vonny=s
car.  Sauls also remembered putting all
the stolen property in Appellant=s
apartment.  According to Sauls, Vonny was
present when they unloaded the televisions at Appellant=s
apartment. 








Appellant
testified at trial and denied having any involvement in the home invasion,
robbery, and rapes that occurred on November 1, 2002.  According to Appellant, one evening between
November 5 and November 10, he was at a barber shop when Collins, Sauls, and
Jones pulled up and said they had some merchandise.  Appellant knew the merchandise had been
stolen.  Appellant purchased the
merchandise, which was in the back of Jones=
car, from Jones.  Appellant gave the
televisions and a watch to his girlfriend. 
Appellant testified that Jones had lied about being paid to help burn
the victims=
van.  Appellant believed that Sauls and
Collins implicated him because they thought he was Asnitching@ on them.

DISCUSSION

FACTUAL
SUFFICIENCY

In his sole issue,
Appellant contends that the evidence to support his aggravated robbery
conviction is factually insufficient. 
Specifically, he asserts that the evidence was factually insufficient
because it was outweighed by his own testimony and the accomplice testimony was
not credible.

Standard
of Review








Appellant raises
only a factually sufficiency challenge to the evidence, therefore our factual
sufficiency analysis presumes that the evidence is legally sufficient.[2]  See Clewis v. State, 922 S.W.2d 126,
134 (Tex.Crim.App. 1996).  In reviewing
the factual sufficiency of the evidence, we must determine whether considering
all the evidence in a neutral light, the fact finder was rationally justified
in finding guilt beyond a reasonable doubt. 
Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004); see
also Clewis, 922 S.W.2d at 129. 
There are two ways in which we may find the evidence to be factually
insufficient:  (1) the evidence
supporting the verdict or judgment, considered by itself, is too weak to support
the finding of guilt beyond a reasonable doubt; or (2) after weighing the
evidence supporting the verdict and the evidence contrary to the verdict, the
contrary evidence is so strong that guilt cannot be proven beyond a reasonable
doubt.  Zuniga, 144 S.W.3d at
484-85.  AThis
standard acknowledges that evidence of guilt can >preponderate= in favor of conviction but still be
insufficient to prove the elements of the crime beyond a reasonable doubt.@ 
Zuniga, 144 S.W.2d at 485. 
In other words, evidence supporting a guilty finding can outweigh the
contrary proof but still be insufficient to prove the elements of an offense
beyond a reasonable doubt.  See id. at
481-82; Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis,
922 S.W.2d at 133.  Our evaluation should
not intrude upon the fact finder=s
role as the sole judge of the weight and credibility given to any witness=s testimony.  Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997).  An opinion
addressing factual sufficiency must include a discussion of the most important
and relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Factual
Sufficiency of the Evidence

Sauls testified
that he and Appellant robbed the victims at gunpoint and although he was on
drugs at the time, Sauls did remember sexually assaulting one of the victims
and stealing the victims=
property, including the televisions and the family=s
van, which was later set on fire.  This
accomplice testimony was corroborated by Jones=
testimony concerning his later involvement in burning the van and having been
told by the men that they had just committed a robbery.  Jones also testified that he saw the stolen
property in the van.  Jones denied
selling the televisions to Appellant.  In
addition to this evidence, N.D.=s
daughter testified that Appellant was one the assailants who robbed and
sexually assaulted her at gunpoint.  The other
victims who testified could not identify Appellant, but all agreed that the
assailants were black, including Appellant, and that one was taller than the
other two.  Further, the police recovered
some of the stolen items from Appellant=s
girlfriend, Appellant=s
apartment, and his girlfriend=s
apartment.  








In his brief,
Appellant argues that Sauls=
testimony was not credible in that Sauls apparently had difficulty
understanding the concept of Alying@ and could not remember any details
about the occurrence.  Appellant also
argues that Jones=
testimony was also unbelievable. 
However, the trial court was free to evaluate the credibility and
demeanor of the witnesses, and accept some or all of the witnesses= testimony.  See Cain, 958 S.W.2d at 407.

Appellant points
out that his own testimony clearly explained that Jones and Sauls were
motivated to implicate him because they believed he had led to their arrests.[3]  According to Appellant, he bought the stolen
merchandise from Jones, but did not participate in the crimes alleged in any
way.  Appellant also notes that DNA
evidence recovered from the crime scene, linked Sauls and Collins to the
crimes, but not him.  We also observe
that Appellant testified that he was taller than Collins and Sauls, but that
Jones was just as tall, if not taller than he.

After reviewing
all the evidence in a neutral light, we conclude that the evidence is not too
weak to support the finding of guilt beyond a reasonable doubt nor is the
contrary evidence strong enough that the beyond‑a‑reasonable‑doubt
standard could not have been met. 
Therefore, we conclude the jury was rationally justified in finding
Appellant guilty beyond a reasonable doubt. 
Accordingly, we overrule Appellant=s
sole issue.

 

 








The judgment of
the trial court is affirmed.  

 

 

August
11, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Appellant was also indicted on two charges of aggravated sexual assault in
cause numbers 989,351 and 989,352. 
Appellant has also appealed the judgments rendered in those cases, which
are affirmed by opinions issued this same day in cause numbers 08-04-00219-CR
and 08-04-00224-CR, respectively.





[2]
In his brief, Appellant acknowledges that the State presented sufficient
corroboration of the accomplice testimony to satisfy the legal sufficiency of
the evidence.





[3]
There is nothing to indicate that Jones was arrested for participation in the
November 1, 2002 home invasion.  Rather,
Jones was identified as an informant in the police investigation.  Jones testified that he was incarcerated on a
drug offense.  He also testified that he
had no charges for stealing in the last ten years.  There was no evidence that Jones participated
in the offenses of November 1, with which Appellant was charged.  Thus, Jones was not an accomplice.  See Kunkle v. State, 771 S.W.2d 435,
439 (Tex.Crim.App. 1986).